**U. S. GENERAL, INC.,
Plaintiff-Appellee,**

v.

**CITY OF JOLIET, etc., et al.,
Defendants and Third-Party
Plaintiffs-Appellants,**

v.

**Patricia HARRIS, Secretary and John L.
Waner, Director of the U. S. Department
of Housing and Urban Development, et
al., Third-Party Defendants-Appellees.**

**No. 78–1701.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1978.

Decided Jan. 16, 1979.

James M. P. D'Amico, Elkhorn, Wis., for defendants and third-party plaintiffs-appellants.

James R. Schirott, Des Plaines, Ill., Stanley J. Davidson, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, PELL and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

At issue is the dismissal by the district court of Count III of a third-party complaint appealed under Rule 54(b) of the Federal Rules of Civil Procedure. The initial complaint filed in 1975 by General, a Wisconsin corporation in the construction business, against the City of Joliet, the city councilmen, the mayor, the director of the Department of Community Development and the corporation counsel alleged various theories of relief related to the refusal of the city and its officials to rezone or issue building permits allowing General to construct public housing with the financial support of the U.S. Department of Housing and Urban Development. In 1977 appellants filed their third-party complaint naming as counterdefendants for the purposes of Count III, in addition to General, General's president and the various attorneys representing General in this litigation, all of whom except General were not parties to the original action. The trial court dismissed Count III and sought to make that interlocutory order appealable under Rule 54(b) of the Federal Rules of Civil Procedure.[1]

The allegations of Count III and the justification for the trial court's dismissal must be examined.

Whatever Count III may be, it does not qualify as a "short and plain statement of the claim showing that the pleader is entitled to relief."[2] Nor does it qualify as two or more statements of a claim stated alternatively in one count.[3] Rather Count III appears to be a legal bouillabaisse with bits of 42 U.S.C. § 1985,[4] 42 U.S.C. § 1986,[5] 42

1. Although the question of compliance with the specific requirements of Rule 54(b) of the Federal Rules of Civil Procedure was not raised by the parties, it deserves notice. It is generally recognized that piecemeal appeals are to be avoided, but that the "infrequent harsh case" may merit the exercise of discretion to certify for appeal an interlocutory order not otherwise appealable. 10 Wright and Miller, Federal Practice and Procedure, § 2659 at 76 (1973). The 54(b) certificate in the present case states only that "the Court further finds no just reason to delay the immediate execution of its order or appeal therefrom and accordingly the order dated April 14, 1978 is made final." That entry, upon which this court's jurisdiction rests, does not track even the conclusionary language of Rule 54(b) as it fails to make "an express direction for the entry of judgment." The order is only designated as "final." A proper exercise of the trial court's discretion under Rule 54(b) also requires more than a recital of the statutory formula. The considerations underlying the exercise of that discretion should be articulated. *Allis-Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360 (2d Cir. 1975); *Gumer v. Shearson, Hammill & Co.,* 516 F.2d 283 (3d Cir. 1974); *Panichella v. Pennsylvania Railroad Co.,* 252 F.2d 452 (3d Cir. 1958). Nor do we find in the record a separate judgment document as required by Rule 58 of the Federal Rules of Civil Procedure. Our examination of the record reveals, however, that the trial court and counsel for all parties con-

sidered the order to be appealable. It appears the parties waived the separate judgment requirement. *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). We will treat for the purposes of this case the trial court's designation of the order as final to be an express direction for the entry of judgment. In spite of the lack of expression of the reasons underlying the exercise of the trial court's discretion, after an independent review of the record for the purposes of this case we hold the Rule 54(b) certificate was not improvidently granted. Future Rule 54(b) certifications with similar deficiencies may not be expected to survive in this court.

2. Rule 8(a), Federal Rules of Civil Procedure.

3. Rule 8(e)(2), Federal Rules of Civil Procedure.

4. Count III fails to tell us which of the numerous conspiracies contained in 42 U.S.C. § 1985 is intended as the allegation only refers to the "conspiracy mentioned in 42 U.S.C. 1985." That section defines numerous conspiracies including among others preventing a person from holding office under the United States, obstructing justice, going in disguise on a highway, and threatening a citizen in the exercise of his right to vote for federal office.

5. 42 U.S.C. § 1986 provides in part:
   Every person who, having knowledge that any of the wrongs conspired to be done, and

U.S.C. § 3604(b),[6] and 42 U.S.C. § 3617,[7] with a strong flavor of malicious prosecution, a touch of abuse of process along with the additional ingredients of "bad faith" and "unreasonable litigation" all stirred and served as one count in a "Third-Party complaint."

The trial court's analysis of this controversial count was that it purported to allege a conspiracy by General, its president and their lawyers to perpetuate racial segregation within the City of Joliet, together with the tort allegations of malicious prosecution or abuse of process. Looking to appellants' brief for assistance in attempting to analyze Count III, we find these explanations:

The substance of the charge contained in the counter-claim is that the contract was contrary to the representations made to the City by the Joliet Housing Authority for a "scattered site" proposal, violative of HUD guidelines for locating public housing, contrary to prescribed subdivision regulations and other building requirements and finally violative of equal protection provisions of both State and Federal Constitutions to the extent that the proposal sought to locate low income public housing in predominantly black and integrated sections of the city.

\* \* \* \* \* \*

The trial court's reading of Count III recognized the torts of malicious prosecution and abuse of process. . . . .

\* \* \* \* \* \*

The gist of the counterclaim is that the plaintiff and its attorneys conspired to join the public officials of the City of Joliet in threatened litigation in their individual capacities, with allegations of malicious conduct for the sole purpose of forcing them to negotiate a settlement of a worthless cause of action which had not been pursued for some two years after its alleged accrual, despite the availability of mandamus and numerous other remedies available to the plaintiff. Further, it forced the city officials into a position calculated to create a conflict situation requiring them to choose between suffering defense of this lawsuit at great personal loss or negotiating an unwarranted settlement of the issues thus imposing the burden of such a settlement on the citizens of the city in tax levies.

\* \* \* \* \* \*

While Count III of the third party complaint does, indeed, state a cause of action for malicious prosecution it is not solely dependent upon this nonfederal claim for viability nor even to the single tort of malicious prosecution but, rather, the entire portfolio of actions which may come under the general description of unreasonable litigation. The counterclaim also asserts claims founded upon federal statutes: 42 USC 1985; 42 USC 1986; 42 USC 3604; and 42 USC 3617.

We have little choice initially but to accept appellants' explanation of what Count III is all about, but that explanation makes evident what the problem is. In order to save Count III appellants ask us, among other things, to convert, if necessary, the third-party complaint into a counterclaim, realign and redesignate the parties, and to

---

mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

**6.** 42 U.S.C. § 3604(b) makes it unlawful:

To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, or national origin.

**7.** 42 U.S.C. § 3617 provides:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title. This section may be enforced by appropriate civil action.

remember *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). We will consider that rather strenuous task.

■ *Haines v. Kerner* causes us to liberally construe the pro se complaints of prisoners, not formal pleadings drafted by lawyers, even if acting pro se. Neither the trial court nor this court should be required to spend much time in attempting to redraft a cause of action for one of the parties. Federal pleading practice even under the most liberal view does not mean that all the rules may be ignored. Some understandable allegations, even if inartfully drawn, remain essential to any effort to formulate a recognizable issue for disposition on its merits.

■ The trial judge filed a reasoned memorandum in support of his order of dismissal with which we are in substantial agreement. First, he found that under Rule 14 of the Federal Rules of Civil Procedure the additional parties could not be added as third-party defendants since there was no claim that any one of·the additional parties would be secondarily liable to appellants in the event it was found in the original cause that appellants were liable to appellees. That is a plain condition on the face of Rule 14.[8] The rule is not altered merely by the fact that the alleged third-party claim grew out of the same transaction. *Parr v. Great Lakes Express Co.,* 484 F.2d 767 (7th Cir. 1973); *U. S. Fidelity Guaranty Co. v. American State Bank,* 372 F.2d 449 (10th Cir. 1967).

Next, the trial court considered Count III as a possible compulsory counterclaim under Rule 13(a) or as a permissive counterclaim under Rule 13(b) so as to permit the joinder of additional parties under Rule 13(h). The trial court found that, viewing Count III as a counterclaim, joinder was not permissible for the reason that if Count III was conceivably based upon an alleged attempt by appellees to promote housing discrimination, appellants have failed to allege any

discrimination against themselves or any other injury, economic or otherwise, resulting from appellees' alleged promotion of housing discrimination. *Data Processing Service v. Camp,* 397 U.S. 150, 151–52, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Thus, as presently alleged in Count III appellants have demonstrated no standing to litigate .the issue of discrimination in public housing if that is the issue they claim to be raising. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). We do not mean to imply that it is not possible for appellants to raise the housing discrimination issue by a proper allegation. Appellants argue that if General has been found to have standing that appellants are equally entitled. The standing of General to assert its claims is not before us but we note from the record that in a previous order not appealed, General was found to have no standing in three of its seven counts. None of General's remaining counts is in any way comparable to Count III so as to raise a similar standing issue.

The trial court viewed Count III as boiling down to a claim of malicious prosecution or abuse of process. So do we, and at least to some extent, so do appellants. As we read Count III, its mention of housing discrimination and the federal statutes is at most only background. The thrust of the count is that the additional parties conspired to threaten to file and did file the present lawsuit to promote their own business interests and to "intimidate, embarrass and coerce" the defendants with untrue allegations. Assuming the truth of that allegation, the appellants seem not to be complaining about integrated housing, but about being individually sued, causing them to have "suffered embarrassment, loss of political esteem, damage to their reputations in the community, and pecuniary losses in having to defend themselves from untrue allegations of the complaint. . ." The allegation is not that they, the city,

8. In pertinent part Rule 14(a) provides:
   At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.

minority groups or others have suffered from any lack of public housing. Appellants' allegations, if such was their intent, are not sufficient to bring them within *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), as having lost the benefit of living in an integrated community.

The trial court also found that Count III was premature as a malicious prosecution charge, as it necessarily depended upon the outcome of the original suit.

■ There is another basic defect. We do not view Count III as a compulsory counterclaim, but only as a possible permissive counterclaim. We do not accept, however, the narrow view of Rule 13(a) which appellees urge upon us to the effect that a counterclaim can only be asserted against an "opposing party" and therefore that other parties cannot be added for the purpose of a counterclaim. General, named in Count III, was already an existing opposing party which is sufficient to give a defendant the possibility of bringing in additional parties under Rule 13(a) if the counterclaim in the language of Rule 13(d) "arises out of transaction or occurrence that is the subject matter of the opposing party's claim." 3 Moore's Federal Practice ¶ 13.06[1] at 13–131 (2d ed. 1978). If Count III is in fact a malicious prosecution charge as it appears most likely to be, it cannot be a compulsory counterclaim which under Rule 13(a) would have to be filed. It does have some collateral relationship to the original claim, but cannot be considered part of it. Failure to plead malicious prosecution in the suit claimed to be malicious would not act as a bar to subsequently raising the issue against appellees. One of the virtues of the compulsory counterclaim provision is to prevent fragmentation of litigation and multiplicity of suits. *United States v. Heyward-Robinson Co.,* 430 F.2d 1077, 1082 (2d Cir. 1970), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971). That purpose would not be served here as the malicious

prosecution counterclaim by its nature would have to await the outcome of the original suit.[9] We need not reach the question of the propriety of attempting to add General's counsel as counterdefendants because of their alleged part in that same litigation, but our view of that tactic is obvious.

We are considering at best a possible permissive counterclaim which raises other jurisdictional problems. Count III appears to be basically a state cause of action, not ancillary to the original suit. It is not based upon a federal claim even though various federal statutes are mentioned. General is a Wisconsin corporation. Appellants are residents of Illinois. The attorneys for General whom defendants seek to add as counterdefendants are also Illinois residents. Diversity (as a basis for an independent cause of action) therefore does not exist under 28 U.S.C. § 1332.

■ The Supreme Court recently noted that ancillary jurisdiction over non-federal claims has been upheld in situations involving cross-claims, but stresses that the context in which the non-federal claim is asserted is crucial. *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 380, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Even if we assume that Count III may properly be considered to be ancillary, which we do not believe it to be, the unfavorable context of its assertion has already been commented upon. In *Owen Equipment* the Court reaffirmed the principles governing pendent or ancillary jurisdiction set out in *Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The state and federal claims must derive from a common nucleus of fact, but even if that condition exists pendent jurisdiction remains a doctrine of discretion, not of right. The justification for the doctrine lies in judicial economy, convenience and fairness to litigants. If these are not present, the Court says a federal court should hesitate to exercise jurisdiction over state claims. 383 U.S. at

9. Some helpful criteria for determining whether a counterclaim may be compulsory or permissive under the rule are set out in *Pipeliners* *Local Union v. Ellerd,* 503 F.2d 1193, 1198–99 (10th Cir. 1974). Those criteria are not fully met in this case.

726, 86 S.Ct. 1130. In *Aldinger v. Howard*, 427 U.S. 1, 14–15, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Court commented that the addition of a completely new party for purposes of a state law claim over which there was no independent basis of federal jurisdiction would run counter to the well established principle that federal courts as opposed to state courts are courts of limited jurisdiction. Appellants' Count III fails these tests. There was no abuse of discretion by the trial judge in dismissing the count.

Appellants explain that Count III is also premised on *Satoskar v. Indiana Real Estate Commission*, 517 F.2d 696 (7th Cir.), *cert. denied*, 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975), and *Bond v. Stanton*, 528 F.2d 688 (7th Cir. 1976), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). Appellants charge the appellees with "bad faith." Appellees reply that this is an explanation first raised on appeal and is therefore not to be considered. In any event the cases relied upon have to do only with the assessment of attorneys' fees by the court in situations where the court, for instance, finds an appeal was not taken in good faith. We see no merit in this view which is also subject to the other deficiencies we have already noted.

This case still remains to be tried in the district court on the remaining counts of the parties. We do not find in the record any request by the appellants for leave to amend Count III. Our decision in the event we have perceived Count III to be something other than what was intended does not preclude the trial judge's exercise of his discretion in permitting appellants the opportunity to amend Count III. Our view of the present Count III, of course, cannot restrain appellants from later seeking relief on any alleged malicious prosecution claim in a state court.

Affirmed.