OAKHILL CEMETERY OF HAMMOND, INC., an Indiana Corporation, and Roy A. Roark, Plaintiffs,

v.

TRI-STATE BANK, an Illinois Banking Corporation; David J. Robinson; Arthur Franklin Corp., an Indiana Corporation; John F. Wilhelm; Wayne Breneman; Jean Breneman; Guy Callahan; J. R. Guess, a/k/a Elbert Guess, Jr.; Marshall L. Hannon; Rosemary Hannon; Henry Malen; Jerold O. Wright; Hoosier State Bank of Indiana, an Indiana Banking Corporation; First National Bank of Kokomo, a National Banking Association, Defendants.

No. 80 C 1699.

United States District Court, N. D. Illinois, E. D.

April 30, 1981.

Alan T. Sraga, Anthony Scariano & Associates, Chicago Heights, Ill., for plaintiffs.

Morris Gzesh, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

### Introduction

Plaintiffs Oakhill Cemetery of Hammond, Inc. (Oakhill) and Roy A. Roark bring this action against several corporate and individual defendants alleging violations of the federal securities laws and state law. Roark, an Illinois resident, is an officer, director, and shareholder of Oakhill. Defendants include: Tri-State Bank (Tri-State), an Illinois banking corporation; David Robinson, an Illinois resident and a loan officer in Tri-State's employ; Arthur Franklin Corporation (A. F. Corporation), an Indiana corporation and former principal shareholder of Oakhill; John Wilhelm, an Indiana resident and a former trustee of Oakhill's Perpetual Care Fund (the "Fund");[1] Wayne Breneman, a Missouri resident and former director, officer, and shareholder of Oakhill; his wife Jean, a former shareholder of Oakhill; Guy Callahan, an Illinois resident and a former director, officer, and shareholder of Oakhill and a former trustee of the Fund; J. R. Guess, an Illinois resident and former director, officer, and shareholder of Oakhill; Marshall Hannon, an Illinois resident and a former director and officer of Oakhill, and a debtor of Roark; his wife Rosemary, a debtor of Roark; Henry Malen, an Illinois resident and former director and officer of Oakhill; Jerold Wright, an Illinois resident and a guarantor of the Hannons' debt to Roark; Hoosier State Bank of Indiana (Hoosier), an Indiana banking corporation and a former trustee of the Fund; and First National Bank of Kokomo (Kokomo), an Indiana banking corporation and a trustee of the Fund. The jurisdiction of the Court is allegedly invoked pursuant to 15 U.S.C. §§ 77v[2] and 78aa[3] and the doctrine of pendent jurisdiction. Pending before the Court are motions to dismiss made by Hoosier, Kokomo, Tri-State, and Robinson, and a motion for summary judgment made by A.F. Corporation and Wilhelm.

Plaintiffs' complaint alleges, *inter alia*, that during the past decade Oakhill has been injured by several securities transactions violative of federal and state law and that its assets have been mismanaged by those owing a fiduciary duty to it. Plaintiffs' claims are set forth in Counts III through XV of their complaint. Count III concerns the sale by Callahan to Roark on December 29, 1978 of a promissory note in the amount of $55,000 executed by the Hannons and a security interest in 500 shares of Oakhill stock. The note and security agreement were given to Callahan by the Hannons when Callahan transferred the 500 shares of Oakhill stock to the Hannons on April 11, 1978. Roark alleges that his purchase of the note and security agreement was intentionally induced by certain misstatements and omissions by Callahan as to the financial health of both the Hannons and Oakhill. Roark alleges that neither the Hannons nor their guarantor have made payment under the note and that the shares of Oakhill are inadequate security for the note. Roark asserts in Count III that the alleged misstatements and omissions by

---

1. Indiana law requires cemeteries to maintain a perpetual care fund to ensure proper maintenance of cemetery grounds. Ind.Code ch. 23, § 14–1–12.

2. 15 U.S.C. § 77v is the jurisdictional provision of the Securities Act of 1933 (the "1933 Act").

3. 15 U.S.C. § 78aa is the jurisdictional provision of the Securities Exchange Act of 1934 (the "1934 Act").

Callahan violated 15 U.S.C. §§ 77q(a)[4] and 78j(b), 17 C.F.R. § 240.10b–5,[5] Ind.Code ch. 23, § 2–1–11,[6] and the common law of Indiana. Roark seeks $100,000 in compensatory damages, $300,000 in punitive damages, and costs and attorneys' fees. In Count IV Roark seeks the same recovery from Guess based upon Roark's allegation that in early December 1978, Guess, who was then an officer, director, and shareholder of Oakhill, made certain misrepresentations to Roark about the financial stability of Oakhill in order to aid Callahan in his alleged scheme to defraud Roark.

In Count V of the complaint Roark seeks recovery from the Hannons on their $55,000 note. Roark seeks in Count VI the same recovery against Marshall Hannon as he seeks in Counts III and IV from Callahan and Guess, respectively, alleging that prior to December 29, 1978 Hannon misrepresented both his and Oakhill's financial health to Roark. Count VII seeks recovery from Wright as a guarantor of the Hannons' note.

Counts VIII and IX contain claims asserted by Oakhill against Callahan and Breneman, respectively, that challenge the propriety of Oakhill's acquisition of 500 of its shares on October 28, 1977. Specifically, these counts allege that Callahan, then an officer and director of Oakhill, and Breneman, then a former officer and director of Oakhill, caused Oakhill to purchase the stock from Breneman when under Indiana corporation law Oakhill had insufficient unreserved and unrestricted earned surplus available to purchase the stock. Oakhill alleges that the $10,000 purchase price for the stock was paid from the proceeds of a $11,000 loan made to Oakhill by Tri-State on October 28, 1977. Counts VIII and IX allege that the above stock transaction defrauded Oakhill in violation of the federal securities laws, as well as violated Indiana corporation law. Counts VIII and IX seek recovery of $11,000 in compensatory damages, costs, and attorneys' fees. In Count X Oakhill seeks the same recovery as in Counts VIII and IX against Tri-State, alleging that Tri-State made the loan to

4. 15 U.S.C. § 77q(a) is the principal antifraud provision of the 1933 Act. It provides:
"It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
"(1) to employ any device, scheme, or artifice to defraud or
"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading, or
"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

5. Plaintiffs' complaint repeatedly refers to "Section 77q(a)" of the 1934 Act. No such section exists. The jurisdictional paragraph of plaintiffs' complaint and their briefs establish that plaintiffs' references to "Section 77q(a)" of the 1934 Act are intended to be references to 15 U.S.C. § 78j(b), the principal antifraud provision of the 1934 Act. That section provides, in pertinent part, that it shall be "unlawful for any person ... [t]o use or employ, in connection with the purchase or sale of any security

... any manipulative or deceptive device or contrivance in contravention of such rules as the Commission [the Securities Exchange Commission] may prescribe as necessary or appropriate in the public interest or for the protection of investors." Pursuant to its rulemaking power under this section, the Securities Exchange Commission (the "SEC") promulgated 17 C.F.R. § 240.10b–5, which now provides:
"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or any facility of any national securities exchange
"(a) To employ any device, scheme, artifice to defraud,
"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading or
"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
"in connection with the sale or purchase of any security."

6. Ind.Code ch. 23, § 2–1–11 concerns the denial, suspension, or revocation of the registration under Indiana law of brokers and investment advisors and their agents.

Oakhill with knowledge of the alleged scheme to defraud Oakhill.

Counts XI and XII seek recovery on behalf of Oakhill against the Brenemans and Callahan, respectively, for certain other transactions allegedly undertaken by those defendants on Oakhill's behalf. Counts XI and XII allege that on March 26, 1977 Callahan purchased 500 shares of Oakhill stock from the Brenemans. The purchase price, Oakhill alleges, was paid from the proceeds of a $60,000 loan obtained by Callahan and Mr. Breneman on Oakhill's behalf from Tri-State. The loan was allegedly secured by Oakhill's real property. Oakhill alleges that the above transaction was not duly authorized as required by its by-laws and Indiana law and that Callahan's resulting indebtedness to Oakhill was not adequately secured. Further, Oakhill alleges in Counts XI and XII that Callahan and the Brenemans violated the federal securities laws. Oakhill seeks recovery of $60,000 in compensatory damages, $180,000 in punitive damages, costs, and attorneys' fees. Oakhill seeks the same recovery in Counts XIII and XIV of the complaint against Robinson, a Tri-State loan officer, and Tri-State, respectively, alleging their complicity in the acts complained of in Counts XI and XII.

Count XV, the final count in plaintiffs' complaint, asserts the liability of defendants A.F. Corporation, Wilhelm, Callahan, Malen, Hoosier, Kokomo, Breneman, Guess, and Hannon to Oakhill for their alleged failure to comply with provisions of The Indiana General Cemetery Act, Ind.Code ch. 23, §§ 14–1–1 through 14–1–28 (the "Cemetery Act"). Section 14–1–12 of the Cemetery Act requires every cemetery to establish an irrevocable perpetual care fund. See note 1, supra. The amount placed in a fund is fixed by the provisions of section 14–1–12. Section 14–1–18 of the Cemetery Act mandates certain investment practices with respect to a fund, precludes use of a fund's monies for the benefit of directors, officers, shareholders, or employees, and provides that whenever a fund is not man-

aged by a corporate trustee, the cemetery's treasurer shall furnish a fidelity bond. Count XV alleges that each of the defendants to that count engaged in at least one transaction violative of sections 14–1–12 or 14–1–18. Oakhill seeks an order compelling defendants to produce all writings concerning the complained of transactions, an accounting of the transactions, that defendants be ordered to pay Oakhill any sums found to be due it and any property found by the accounting to have been improperly conveyed, and that defendants be restrained from disposing of any assets or proceeds of assets obtained from the fund pending disposition of this count.

### Jurisdiction Under The Federal Securities Laws

Before addressing any of the pending motions, all of which raise narrow jurisdictional issues, the Court turns to a general examination of plaintiff's allegations of jurisdiction under the federal securities laws. At first blush, plaintiffs' complaint suggests acts of common law fraud and corporate mismanagement more than they do violations of the federal securities laws. See Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).[7] Accordingly, the Court has chosen to carefully scrutinize plaintiffs' jurisdictional allegations, see Fed.R.Civ.P. 12(h)(3), while fully bearing in mind that all of the well-pleaded allegations of plaintiffs' complaint shall be taken as true at this, the pleading stage, of this litigation. Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

As can be culled from the above discussion of plaintiffs' complaint, it sets forth three security transactions upon which plaintiffs predicate this Court's jurisdiction. In chronological order they are: (1) the March 26, 1977 purchase by Callahan of 500 shares of Oakhill, comprising one-half of its outstanding shares, from the Brenemans; (2) the October 28, 1977 purchase by Oakhill of its remaining 500 outstanding shares not then held by Callahan; and (3) Roark's De-

---

7. During the pendency of the motions, the Court directed the parties to file additional briefs addressing the Court's jurisdiction under the federal securities laws.

cember 29, 1978 purchase from Callahan of a note secured by the 500 shares of Oakhill formerly acquired by Callahan from the Brenemans.

■ The threshold jurisdictional question to be resolved as to each of the above transactions is whether it involves a "sale" of a "security" within the meaning of the federal securities laws.[8] The fact that a transaction may literally involve the transfer of a security does not necessarily bring that transaction within the ambit of the federal securities laws. *Fredriksen v. Poloway*, 637 F.2d 1147, 1150–51, and cases cited therein, (7th Cir. 1981). Rather, the pertinent inquiry is whether the wrongful conduct alleged to have accompanied the transaction is the sort of conduct which Congress intended to address when drafting the securities laws. *Id.* Simply stated, the securities laws were intended to address investment, as opposed to commercial transactions. *Id.* at 1149–1150, and cases cited therein. Whether a transaction is primarily commercial or investment in character is determined by examining the "economic reality" of the transaction. *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 849, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621 (1975). In order for a transaction in "economic reality" to be primarily for investment purposes the *Forman* Court required the following three elements: (1) an investment in a common venture; (2) premised on a reasonable expectation of profits; and (3) to be derived from the entrepreneurial or managerial efforts of others. *Id.* at 852, 95 S.Ct. at 2060.

■ In *Fredriksen*, the Seventh Circuit held that a securities transaction which is intended to transfer ownership and management control of a corporate entity does not involve the transfer of a "security" within the meaning of the federal securities

laws because such a transaction fails the first and third of the above recited elements, at least insofar as the purchaser is concerned. That holding is dispositive of Oakhill's federal securities claims based upon Callahan's March 1977 purchase of 500 Oakhill shares from the Brenemans. Those shares comprised one-half of Oakhill's then outstanding shares. Further, one of the conditions of their transfer was that Callahan would resume control and management of Oakhill. Complaint, Count XI, ¶ 3. The injured party in *Fredriksen* was the party that assumed control of the corporation involved therein, while in the instant case the injured party is alleged to be the corporation itself. However, the Court does not find that distinction to remove the instant case from the reach of *Fredriksen's* holding. Indeed, to do so would require a determination that the same transaction could be deemed as involving a security as to some of the parties thereto, but not as to others. The Court declines to find that *Fredriksen* was intended to spawn such anomalous results. Accordingly, the Court finds that Callahan's March 1977 purchase of Oakhill stock did not involve "securities" within the meaning of the federal securities laws and that any injury caused Oakhill as result of that transaction was the product of mere corporate mismanagement rather than any violation of the federal security laws.[9] *See Santa Fe Industries, Inc. v. Green*, 430 U.S. at 479, 97 S.Ct. at 1304.

■ The Court also finds that Oakhill's October 1977 purchase of 500 of its own shares, while arguably involving the sale of securities within the meaning of the securities laws, is nonetheless not within the scope of the federal securities laws. First, it is abundantly clear that Oakhill has not alleged a violation of 15 U.S.C. § 78j(b) or

---

**8.** Securities are defined in the same manner for purposes of both the 1933 Act and the 1934 Act. *Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96, 99 (7th Cir. 1977).

**9.** Moreover, Oakhill has no standing to bring claims under 15 U.S.C. § 78j(b) or 17 C.F.R. § 240.10b–5 on the basis of the March 1977 Callahan purchase because it has not alleged

itself to be a purchaser or seller of securities transferred in that transaction. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). For the same reason, Oakhill has no standing to bring a claim arising out of that transaction under 15 U.S.C. § 77q(a).

17 C.F.R. § 240.10b–5. Those remedial provisions are directed only at deceptive or manipulative conduct. *Id.* at 473, 97 S.Ct. at 1301. Manipulative conduct involves "artificially affecting market activity in order to mislead investors." *Id.* at 477, 97 S.Ct. at 1302. Such conduct is not alleged herein.

█ The securities laws' prohibition of deceptive conduct is aimed at breaches of a duty to disclose. *See id.* at 474, 97 S.Ct. at 1301; *Wright v. Heizer Corp.*, 560 F.2d 236, 246 (7th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Superintendent of Insurance of New York v. Freedman*, 443 F.Supp. 628, 635 (S.D.N.Y. 1977), *aff'd*, 594 F.2d 852 (2d Cir. 1978). When a corporation is the alleged injured seller or purchaser in a securities transaction, deceptive conduct is shown only if there is a breach of a duty to disclose to either independent directors or shareholders. *Wright v. Heizer Corp.*, 560 F.2d at 247; *Superintendent of Insurance of New York v. Freedman*, 443 F.Supp. at 635–36. In the instant case, Callahan and the Brenemans were the only shareholders of Oakhill at the time of the Oakhill purchase of Brenemans' shares, Callahan was the controlling person of Oakhill, and there were apparently no independent directors. In short, there was no one to whom Callahan and the Brenemans owed a duty of disclosure. Instead, the misconduct of Callahan and the Brenemans alleged by Oakhill is the sort of conduct governed solely by state corporate law. *See Santa Fe Industries,*

*Inc. v. Green*, 430 U.S. at 479, 97 S.Ct. at 1304.

Similarly, the Court concludes that Oakhill has no cognizable claim under 15 U.S.C. § 77q(a) as a result of its October 1977 purchase of the Brenemans' remaining shares. The three subsections of section 77q(a) proscribe distinct kinds of misconduct and are to be construed broadly enough to encompass all frauds attendant the sale of securities. *United States v. Naftalin*, 441 U.S. 768, 99 S.Ct. 2077, 60 L.Ed.2d 624 (1979).[10] All of the subsections of section 77q(a) are, however, addressed to types of deceptive conduct. The defect in Oakhill's claims under section 77q(a), as with its claims under the 1934 Act, is that Oakhill was not deceived. As stated, all persons with an interest in Oakhill and in control of Oakhill at the time of the subject transaction were knowing participants therein. Their knowledge should be attributed to Oakhill. *See Goldberg v. Meridor*, 567 F.2d 209, 219 (2d Cir. 1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1249, 54 L.Ed.2d 771 (1978). Hence, Oakhill cannot be characterized as a deceived purchaser. *See Wright v. Heizer Corp.*, 560 F.2d at 246–47; *Superintendent of Insurance of New York v. Freedman*, 443 F.Supp. at 635–36. *But see Bailes v. Colonial Press, Inc.*, 444 F.2d 1241 (5th Cir. 1971).[11] Accordingly, the Court finds that Oakhill has stated no claim under section 77q(a) arising out of its October 1977 reacquisition of shares from the Brenemans. In addition, the immediately preceding discussion is also applicable to the Callahan March, 1977 purchase and therefore pro-

---

10. Oakhill has not indicated under which of section 77q(a)'s subsections its claims based upon its October 1977 purchase are bought. The Court presumes for the purposes of the instant motion that it seeks relief under all of the subsections. In this connection, the Court notes that this Circuit has interpreted 15 U.S.C. § 77q(a) as implying a cause of action for damages in favor of private parties. *Daniel v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 561 F.2d 1223, 1245 (7th Cir. 1977). Contra, *Manchester Bank v. Connecticut Bank & Trust Co.*, 497 F.Supp. 1304, 1314, and cases cited therein (D.N.H.1980).

11. In *Bailes* the Fifth Circuit allowed recovery under the federal securities laws where all of the promoters of a corporation participated in the misuse of corporate assets to the detriment of subsequent shareholders only. That case, however, is distinguishable from Oakhill's instant claim in that in *Bailes* the wrongful conduct was designed to deceive subsequent shareholders. To the extent *Bailes* can be construed as authority in support of Oakhill's claim, this Court concurs with the Freedman Court's criticism of *Bailes*, 443 F.Supp. at 636, *Superintendent of Insurance of New York v. Freedman*, 443 F.Supp. at 636, in that Oakhill's claim is the sort that should be relegated to state regulation of corporate activity. *See Santa Fe Industries, Inc. v. Green*, 430 U.S. at 479, 97 S.Ct. at 1304.

vides an additional reason for finding that Oakhill's claims based upon that transaction are not claims within the scope of federal law.

■ The remaining transaction upon which this Court's jurisdiction can be predicated is Roark's purchase of a note secured by a pledge of 500 shares of Oakhill. There is no evidence in the record that this transaction was intended to confer ownership and responsibility for the day-to-day operations of Oakhill upon Roark. Presumably, Roark did not obtain ownership of Oakhill and responsibility for its operation until he exercised his option to demand title and ownership of the securities after the Hannons defaulted upon their note. Moreover, the terms of repayment on the note—providing for accelerated payment in the event Oakhill achieved a certain operating success—are indicia that the transaction was of an investment as opposed to a commercial character. *See Fredriksen v. Poloway*, 637 F.2d 1147. Thus, the Court finds that the transaction involved a security within the meaning of the federal securities laws.

■ Further, when one parts with value and accepts securities as collateral security for repayment, a "sale" of securities occurs within the meaning of the securities laws. *Rubin v. United States*, —— U.S. ——, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981).[12] Accordingly, one accepting such security has a remedy under the federal securities laws for false representations as to the value of that security. *Id.* In this connection, the Court finds it insignificant that the note and security therefor were not given directly to Roark, but that Roark purchased the note and pledge from Callahan.

Therefore, based on the present record, the Court finds that Roark has stated a cognizable claim under the federal securities laws. Because, however, the Court finds that Oakhill has not stated any federal claim, plaintiffs may rely only upon Roark's federal claims if the Court is to exercise jurisdiction over their non-federal claims. The Court now turns to a discussion of the pending motions.

### Hoosier's Motion

The Court turns first to Hoosier's motion to dismiss. Hoosier was the trustee of the Fund from March 1, 1968 to October 10, 1975. Hoosier is a defendant to this action to only Count XV, wherein Oakhill alleges that Hoosier violated the Cemetery Act when it permitted certain assets to be withdrawn from the Fund during its trusteeship. Oakhill's claim against Hoosier is thus founded exclusively upon Indiana law and the only possible source of this Court's jurisdiction over that claim is the doctrine of pendent jurisdiction. Hoosier contends in its motion that the requisites of pendent jurisdiction are not met with respect to Oakhill's claim against it.

The modern doctrine of pendent jurisdiction has as its genesis the Supreme Court's decision in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs* the plaintiff sought to assert a state law claim against a defendant already before the court on the plaintiff's federal claim. The Court ruled that the first requisite of pendent jurisdiction is constitutional. A federal court has the judicial power to hear a state claim against a defendant already before the court only when there exists a substantial federal claim and that claim and the state law claim "derive from a common nucleus of operative fact." *Id.* at 725, 86 S.Ct. at 1138. Beyond that constitutional requisite, the Court held, the exercise of pendent jurisdiction is a matter committed to the discretion of the court. *Id.* at 726, 86 S.Ct. at 1139. That discretion is to be primarily guided by considerations of judicial economy, convenience, and fairness to the litigants. *Id.*

The only federal claims to which Oakhill's claim against Hoosier relates are those found in Counts III, IV, and VI involving Roark's securities law claims against Callahan, Guess, and Hannon. As stated, the stock transaction underlying those securi-

---

12. When *Rubin* was decided the Seventh Circuit adhered to a contrary rule. *Lincoln National Bank v. Herber*, 604 F.2d 1038, 1044 (7th Cir. 1979).

ties law claims is Roark's purchase of a security interest in 500 shares of Oakhill from Callahan on December 29, 1978. In those counts, Roark alleges that Callahan, Guess, and Hannon all induced Roark's purchase of an interest in the Oakhill shares by making material misrepresentations and omissions about the financial health of Oakhill. The asserted factual nexus between Roark's securities law claims and Oakhill's state law claims against Hoosier is Roark's allegation that among the material information of which Callahan, Guess, and Hannon all failed to apprise Roark was that certain assets of Oakhill had been improperly withdrawn from the fund during Hoosier's trusteeship. Hence, Oakhill's claim against Hoosier and Roark's securities law claims do have some common factual ground.

However, Oakhill's claim against Hoosier calls upon the Court to exercise pendent jurisdiction over not only an additional *claim,* but both of the *parties* to that claim. *Gibbs* and its progeny in the Supreme Court have yet to resolve the constitutional question of the availability of pendent *party* jurisdiction. *Aldinger v. Howard,* 427 U.S. 1, 6–15, 96 S.Ct. 2413, 2416–20, 49 L.Ed.2d 276 (1976). While a majority of the circuits have permitted the joinder of additional parties pursuant to the doctrine of pendent jurisdiction, *see Moor v. County of Alameda,* 411 U.S. 693, 713–14 nn. 29 and 30, 93 S.Ct. 1785, 1798 nn. 29 and 30, 36 L.Ed.2d 596 (1973), the law of this Circuit indicates that the doctrine of pendent jurisdiction should not be extended to additional parties. *U.S. General, Inc. v. City of Joliet,* 598 F.2d 1050, 1054–55 (7th Cir. 1979); *Hampton v. City of Chicago,* 484 F.2d 602, 611 (7th Cir. 1973); *cert. denied,* 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974); *Wojtas v. Village of Niles,* 334 F.2d 797, 799 (7th Cir. 1964), *cert. denied,* 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed. 558 (1965); but *see United Pacific Insurance Co. v. Capital Development Board,* 482 F.Supp. 541, 545–47 (N.D. Ill.1979). The view that holds that pendent jurisdiction may not be employed to bring additional parties before a federal court has been most forcefully argued by the Ninth

Circuit. *Ayala v. United States,* 550 F.2d 1196 (9th Cir. 1977), *cert. dismissed,* 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978); *Aldinger v. Howard,* 513 F.2d 1257 (9th Cir. 1975), *aff'd,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Moor v. Madigan,* 458 F.2d 1217 (9th Cir. 1972), *aff'd sub nom. Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Hymer v. Chai,* 407 F.2d 136 (9th Cir. 1969). The Ninth Circuit's cases hold that to extend pendent jurisdiction to additional parties is to work an unconstitutional enlargement of the limited jurisdiction of the federal courts. *Ayala v. United States,* 550 F.2d at 1200. When the Supreme Court affirmed the Ninth Circuit in both *Moor* and *Aldinger* it was able to do so on nonconstitutional grounds and therefore avoid explicitly endorsing or rejecting the Ninth Circuit's position. *See id.* In *Aldinger,* however, the Supreme Court did voice some implicit support for the Ninth Circuit's position when it stated:

> The situation with respect to the joining of a new party, however, strikes us as being both factually and legally different from the situation facing the Court in *Gibbs* and its predecessors. From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant "derive from a common nucleus of operative fact." True, the same consideration of judicial economy would be served insofar as plaintiff's claims "are such that he would ordinarily be expected to try them

all in one judicial proceeding. . . ." But the addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress.

*Aldinger v. Howard*, 427 U.S. at 14–15, 96 S.Ct. at 2420 (citations omitted).

The Seventh Circuit apparently concurs with the view of the Ninth Circuit, albeit by way of less explicit language. In *Wojtas*, a decision of pre-*Gibbs* vintage, the Seventh Circuit held that the doctrine of pendent jurisdiction is inapplicable to parties. *Wojtas v. Village of Niles*, 334 F.2d at 799. That holding was reaffirmed in *Hampton*, a decision rendered after the Supreme Court's pronouncements on pendent jurisdiction in *Gibbs*. *Hampton v. City of Chicago*, 484 F.2d at 611. Recently, the Seventh Circuit, relying on the above quoted language from *Aldinger*, again refused to permit the doctrine of pendent jurisdiction to embrace an additional party. *U.S. General, Inc. v. City of Joliet*, 598 F.2d at 1054.

■ In view of the above, the Court discerns the position of the Seventh Circuit with respect to the application of pendent jurisdiction to additional parties to be substantially in accord with the rule of the Ninth Circuit. Moreover, without recounting in detail the reasoning of the Ninth Circuit herein, the Court notes that it finds that reasoning to be persuasive. Indeed, it strikes the Court as particularly offensive to the concept of federal courts as courts of limited jurisdiction to permit the joinder of a state law claim to a federal claim when neither party to that claim is also a party to the federal claim, which is precisely what Oakhill seeks to accomplish as to its claim against Hoosier. While the Court is fully mindful that the scope of the Court's pendent jurisdiction is not to be defined in an "unnecessarily grudging" manner, *United Mine Workers v. Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138, it must not lose sight of the

fundamental principle that federal courts are courts of limited jurisdiction. *Aldinger v. Howard*, 427 U.S. at 15, 96 S.Ct. at 2420. In the instant case, the Court finds this latter principle to be sufficiently salient to silence Oakhill's arguments of judicial economy. Accordingly, the Court grants Hoosier's motion and therefore dismisses Oakhill's claim against Hoosier for want of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1).

### Kokomo's Motion

Like Hoosier, Kokomo is a defendant to this action only to Count XV of the complaint and only by virtue of it being a trustee of the Fund. Kokomo, a national bank established in Indiana, has served as the trustee of the Fund from October 10, 1975 to the present date. Oakhill alleges in Count XV of the complaint that Kokomo has participated in the wrongful operation of the Fund during its trusteeship. Kokomo's motion seeks dismissal of Oakhill's claim against it on the ground that under 12 U.S.C. § 94 [13] venue is improperly laid in this district with respect to that claim. Kokomo's motion touches only briefly upon this Court's subject matter jurisdiction over Oakhill's claim against it.

■ As an analytical matter, though, the Court should first ascertain whether its jurisdiction is properly invoked before proceeding to questions of the propriety of venue. *See Brown v. Pyle*, 310 F.2d 95, 96 (5th Cir. 1962). Oakhill's claim against Kokomo stands on no surer jurisdictional ground than does Oakhill's claim against Hoosier. Oakhill's assertion of pendent jurisdiction over its claim against Kokomo relies on Roark's allegation that his failure to be informed of Kokomo's alleged mismanagement of the Fund comprises part of the basis of his securities law claims. Therefore, for the reasons set forth in the preceding discussion of Hoosier's motion, the Court dismisses Oakhill's claim against Kokomo as well for want of subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3).

---

**13.** 12 U.S.C. § 94 provides, in pertinent part: "[a]ctions and proceedings against any [national banking] association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established."

The Court does pause, however, to note that Kokomo's venue argument is meritorious. It is undisputed that Kokomo is a national bank established in Indiana only. Thus, under 12 U.S.C. § 94, the exclusive and mandatory venue provision applicable to actions brought against national banks, *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976), Kokomo may only be sued in the district in Indiana where Kokomo is established absent a waiver by Kokomo of that privilege. There has been no suggestion made herein that Kokomo has waived its right to be sued in the appropriate Indiana district. Accordingly, venue in this district is improperly laid.[14]

### A.F. Corporation's and Wilhelm's Motion

A.F. Corporation and Wilhelm are also defendants to only state law claims asserted in Count XV of the complaint. A.F. Corporation owned Oakhill from August 3, 1964 until April 15, 1975. Wilhelm served as a co-trustee of the Fund from August 3, 1975 until November 18, 1975. Both defendants are alleged to have violated the Cemetery Act in several respects. Their jointly filed motion for summary judgment raises defenses of lack of subject matter jurisdiction and personal jurisdiction and asserts that Oakhill has failed to state a claim upon which relief can be granted.

In support of Oakhill's assertion of pendent subject matter jurisdiction over its claims against A.F. Corporation and Wilhelm, Oakhill, as with respect to its claims against Hoosier and Kokomo, relies upon the allegation made by Roark in his securities law claims that A.F. Corporation's and Wilhelm's alleged violations of the Cemetery Act were among that material information which Callahan, Guess, and Hannon all failed to supply Roark with when he purchased from Callahan an interest in 500 shares of Oakhill stock. Consequently, Oakhill's assertion of subject matter juris-

diction over its claims against A.F. Corporation and Wilhelm suffer from the same defect as does Oakhill's assertion of jurisdiction over its claims against Hoosier and Kokomo.

Defects in subject matter jurisdiction are appropriately raised by way of a motion to dismiss made pursuant to Rule 12(b)(1), rather than by way of a motion for summary judgment. *E. g., Solomon v. Solomon*, 516 F.2d 1018, 1027 (3d Cir. 1975). Interpreting the motion of A.F. Corporation and Wilhelm as a 12(b)(1) motion to dismiss, the Court, for the reasons set forth in its discussion of Hoosier's motion, grants the motion of A.F. Corporation and Wilhelm. Accordingly, Oakhill's claims against A.F. Corporation and Wilhelm are hereby dismissed. Fed.R.Civ.P. 12(h)(3).

### Robinson's Motion

Robinson is a defendant to this action only to Oakhill's claim in Count XIII of the complaint. Counts XI through XIV of the complaint all concern Callahan's March 26, 1977 repurchase of 500 shares of Oakhill stock from the Brenemans. The shares had been sold to the Brenemans by Callahan on November 18, 1975. Callahan's repurchase of the shares was occasioned by a suit filed by the Brenemans to rescind their purchase.

Oakhill alleges that it was defrauded when Callahan and Breneman obtained a $60,000 loan from Tri-State on Oakhill's behalf, secured by real estate of Oakhill, in order to raise the $55,000 paid by Callahan to the Brenemans for the stock. Oakhill alleges its loan from Tri-State was not duly authorized and that the indebtedness of Callahan to Oakhill that arose as a result of the application of the loan monies to his personal obligation was never properly evidenced or secured. Robinson was the Tri-State loan officer who approved the loan to Oakhill. His liability is predicated upon Oakhill's allegation that he knew or should

14. Moreover, because 12 U.S.C. § 94 evinces a Congressional intention to preclude the exercise of pendent jurisdiction over a national bank whenever to do so would require a national bank to defend itself outside the judicial district in which it is established, 12 U.S.C. § 94 forms an alternative basis for not exercising pendent jurisdiction over Oakhill's claim against Kokomo. *See Aldinger v. Howard*, 427 U.S. at 15–16, 96 S.Ct. at 2420–21.

have known of the alleged scheme by Callahan and the Brenemans to defraud Oakhill and therefore his approval allegedly violated 15 U.S.C. § 77q(a), 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b–5, Ind.Code ch. 23, § 2–1–11, and "the laws of the States of Indiana and Illinois." Complaint, Count XIII, ¶ 4.E.

■ However, the Court having already determined that Oakhill has not stated a federal law claim based upon Callahan's March 1977 purchase, the Court finds that Oakhill has not stated a federal claim against Robinson as well. The Court has no independent jurisdiction over Oakhill's state law claims against Robinson. Hence, the Court dismisses Count XIII of plaintiffs' complaint, Oakhill's claims against Robinson.

### Tri-State's Motion

Oakhill's claims against Tri-State are based upon two separate loans to Oakhill. Count X of the complaint concerns Tri-State's October 28, 1977 $11,000 loan to Oakhill, $10,000 of which was allegedly used by Oakhill to purchase 500 of its own shares from Breneman. Count XIV concerns the April 8, 1977 $60,000 loan to Oakhill, the same loan transaction from which Robinson's alleged liability arises. In both Counts X and XIV Tri-State's alleged liability is predicated upon exactly the same legal theories as Oakhill relies upon for its claims against Robinson in Count XIII.

■ The transactions upon which Oakhill's claims against Tri-State are based are both ones which the Court has determined cause no claims to arise in Oakhill's favor under the federal securities laws. Accordingly, the Court dismisses Oakhill's federal law claims against Tri-State. Since Oakhill's state law claims against Tri-State do not enjoy an independent basis for federal jurisdiction, the Court dismisses Counts X and IX in their entirety.

### Conclusion

For the reasons set forth above, the Court dismisses all of Oakhill's claims, found in Counts VIII through XV of the complaint. Those claims, if true, describe a broad pattern of misuse of Oakhill's assets and abuse of its corporate form. However, insofar as Oakhill endeavors to state claims under the federal securities laws, the Court finds that it fails to do so. Further, the Court finds that it has no pendent jurisdiction over Oakhill's state law claims based upon Roark's federal claim. In short, Oakhill asserts only state law claims, and it may obtain all of the relief it requests in state court.

Accordingly, the Court hereby dismisses Counts VIII through XV of plaintiffs' complaint. Oakhill is therefore no longer a party plaintiff to this action and Hoosier, Kokomo, Tri-State, Robinson, A.F. Corporation, Wilhelm, and Malen are no longer party defendants to this action. The claims asserted by Roark in Counts III through VII of the complaint and the defendants thereto remain before the Court. An appropriate order shall enter.