**Ramonita ORTIZ et al., Plaintiffs, Appellants,**

v.

**UNITED STATES GOVERNMENT, Defendant, Appellee,**

v.

**HOSPITAL MIMIYA, INC., Third-Party Defendant, Appellee.**

No. 78–1321.

United States Court of Appeals, First Circuit.

Submitted Oct. 6, 1979.

Decided March 30, 1979.

Osvaldo Perez Marrero, Hato Rey, P. R., and Fiddler, Gonzalez & Rodriguez, San Juan, P. R., on brief, for plaintiffs, appellants.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Julio Morales-Sanchez, U. S. Atty., San Juan, P. R.; Leonard Schaitman and Michael F. Hertz, Attys., App. Section, Civ. Div., Dept. of Justice, Washington, D. C., on brief, for the United States.

Jose E. Otero, Jorge Benitez Gautier, and Salvador Antonetti, San Juan, P. R., on brief, for third-party defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

**LEVIN H. CAMPBELL, Circuit Judge.**

This appeal concerns the power of the district court to permit certain Puerto Rican residents, who have sued the United States for the alleged negligence of a Veterans Hospital, to add to their complaint a nonfederal tort claim[1] against Hospital Mimiya, Inc., a private institution in Puerto Rico. By the time of the proposed amendment, Hospital Mimiya had been brought into the litigation as a third-party defendant by the United States, which claimed a right of indemnification from Mimiya should the United States be found liable. The district court refused to allow plaintiffs to amend their complaint so as to sue Hospital Mimiya directly, and denied their motion for reconsideration, stating that it lacked power to exercise either ancillary or pendent jurisdiction over the proposed nonfederal claim against Hospital Mimiya.[2] We hold that statutory considerations do not bar "the exercise of jurisdiction over the particular nonfederal claim" involved herein, *see Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) and remand to the district court with directions for it to follow in determining whether Article III of the Constitution bars such exercise.

## I.

Upon exhausting their administrative remedies, 28 U.S.C. § 2675, Ramonita Ortiz, et al. (hereinafter appellants) sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80,[3] alleging that on January 21, 1973 appel-

---

1. We use the term " 'nonfederal claim' to mean one as to which there is no independent basis for federal jurisdiction. Conversely, a 'federal claim' means one as to which an independent basis for federal jurisdiction exists." *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 372 n.11, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

2. As in *Kroger,* it is not "necessary to determine here 'whether there are any "principled" differences between pendent and ancillary jurisdiction . . . .' " 437 U.S. at 370 n. 8, *quoting Aldinger v. Howard,* 427 U.S. 1, 13, 96

S.Ct. 2413, 49 L.Ed.2d 276 (1976). Both involve the "same generic problem: Under what circumstances may a federal court hear and decide a state-law claim arising between citizens of the same state?" *Kroger,* 437 U.S. at 370, 98 S.Ct. at 2401.

3. The Federal Tort Claims Act states in part, "§ 1346. United States As Defendant.
   (b) . . . the district court . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death

lants' decedent was taken to the Veterans Hospital in San Juan where the employees and agents of that hospital, "failing to diagnose the seriousness of the condition, did not hospitalize or treat him, · but at his wife's insistence, referred him to Mimiya Clinic for hospitalization with a diagnosis of 'malaria attack.' " Thereafter he allegedly was not given proper treatment and by the time, three days later, that he was returned to the V.A. Hospital he had allegedly sustained "permanent, irreparable damage." Appellants also contend that the V.A. Hospital's "referral [to Mimiya] was an authorization for admission under Veterans Administration's instructions." The decedent, in any event, steadily declined until he died one and one-half years later.

After suit was brought, the United States filed a third-party complaint against Hospital Mimiya seeking indemnification. This complaint, although it failed to make mention of the fact, was bottomed on an independent federal jurisdictional basis, 28 U.S.C. § 1345.[4] Thereafter, appellants unsuccessfully sought leave of court to amend their own complaint to add a negligence claim directly against Mimiya. After denying the motions to amend and for reconsideration, the district court granted appellants permission, to which we assented, to bring an interlocutory appeal, 28 U.S.C. § 1292(b), from these orders. We stayed consideration of the appeal pending the United States Supreme Court's decision in *Qwen Equipment and Erection Co. v. Kro-ger,* which issued last June, 437 U.S. 365, 98 S.Ct. 2391, 57 L.Ed.2d 274 (1978).

While when *Kroger* was first called to our attention it seemed as if it might be controlling, it is now clear that its underlying facts differ significantly from those before us. In *Kroger,* plaintiff, a citizen of Iowa, sued defendant, a citizen of Nebraska, under the diversity statute (there were no federal claims as such). After filing a third-party complaint against Owen Equipment and Erection Company, defendant moved for summary judgment on plaintiff's claim against it. While this motion was pending, plaintiff successfully moved to amend its complaint to add a claim against Owen. Summary judgment was thereafter rendered in defendant's favor on the original claims, leaving only plaintiff's claim against Owen to proceed to trial. On the third day of trial, Owen moved to dismiss for lack of subject matter jurisdiction on the ground that it was a citizen of the same state as plaintiff. The district court denied the motion and was affirmed on appeal. The Eighth Circuit reasoned that in light of *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), because plaintiff's claims against the defendant and Owen arose out of a common nucleus of operative fact, exercise of jurisdiction over the nonfederal claim was not barred by Article III of the Constitution which defines the scope of district court jurisdiction.[5] The Supreme Court reversed,

caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

"§ 2674. Liability of United States.

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to persons respectively, for whose benefit the action was brought in lieu thereof."

4. "§ 1345. United States as Plaintiff.

Except as otherwise provided by Act of Congress, the district court shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

5. U.S.Const., art. III, § 2, cl. 1, states:

"The judicial Power shall extend to all Cases, in Law and Equity, arising under this

holding that it would conflict with the intent of Congress as manifested in the diversity statute for the district court to exercise jurisdiction over plaintiff's claim against Owen.

The Court said that there are two "hurdle[s] that must be overcome in determining that a federal court has jurisdiction over a particular controversy. For the jurisdiction of the federal courts is limited not only by the provisions of Art. III of the Constitution, but by Acts of Congress." *Kroger,* 437 U.S. at 372, 98 S.Ct. at 2402. The Court went on to rule that the history of the diversity of citizenship statute, 28 U.S.C. § 1332(a)(1), "clearly demonstrates a congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant." *Id.* at 374, 98 S.Ct. at 2403. Since the exercise of jurisdiction over plaintiff's claim against Owen destroyed complete diversity between the plaintiff and defendants, the claim was outside the scope of the jurisdiction conferred on federal courts by Congress in enacting the diversity statute. *Id.* The Court never reached the issue whether jurisdiction would have existed under Article III.

The *Kroger* analysis is not dispositive here since the present case was not brought under the diversity statute but rather under the Federal Tort Claims Act. Furthermore, Hospital Mimiya's status in the case is different from Owen's, as it is a third-party defendant under a federal jurisdictional statute. These factors point to a different analysis and, ultimately we believe, a different result, from *Kroger.*

In deciding whether the district court erred in ruling that it lacked judicial power to hear appellants' claim against Hospital Mimiya, we first consider whether jurisdiction is precluded by Article III. While this question was bypassed in *Kroger,* it re-

mains—as the *Kroger* Court acknowledged—one of two fundamental "hurdles," both of which must be cleared for jurisdiction to exist. *Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218, contains guidelines for delineating the scope of the constitutional limits to federal judicial power, at least where the federal claim to which a plaintiff seeks to append a nonfederal claim arises under the portion of Article III extending the judicial power to cases " 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority." *See* note 5, *supra* ; *Kroger,* 437 U.S. at 371, 98 S.Ct. at 2401. In *Gibbs* plaintiff raised two claims arising out of the same incident against the defendant, one based on federal substantive law and the other on state law. The federal claim was founded upon a provision of the Labor Management Relations Act, 29 U.S.C. § 187(b), banning secondary boycotts and the state law claim was for intentional interference with employment and business contracts. At issue was whether the district court could exercise pendent jurisdiction over the state law claim. The Court held:

"Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .,' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, [53 S.Ct. 549, 77 L.Ed. 1062]. The state and federal claims must derive from a common nucleus of operative fact. But if,

Constitution, the Laws of the United States, and Treaties made, or which shall be made under their authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Con-

troversies between two or more States;—between a State and Citizens of another State; —been Citizens of different States;—between Citizens of the same States claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole."

383 U.S. at 725, 86 S.Ct. at 1138 (emphasis in original; footnotes omitted). Thus, where the federal claim " 'aris[es] under . . . the Laws of the United States,' " the exercise of judicial power over a non-federal claim is not barred by Article III when the federal claim raises a substantial question and the federal and nonfederal claims arise from a common nucleus of operative fact. *Kroger*, 437 U.S. at 378–79, 98 S.Ct. at 2401. (White, J., dissenting).

One possible distinction between *Gibbs* and the present case is that *Gibbs* involved a "[c]ase . . . arising under the Laws of the United States." It is by no means clear that Federal Tort Claims Act actions are "[c]ase[s] . . . arising under . . the Laws of the United States." More likely, they arise under the portion of Article III authorizing federal court jurisdiction in "[c]ontroversies to which the United States shall be a Party." [6] *See* note 5, *supra*. Should the *Gibbs* standards for determining when pendent jurisdiction is barred by Article III be applied where the federal question raises a "controversy," as opposed to a "case"? This question was left unanswered by the majority in *Kroger*, which stated with respect to the Eighth Circuit's application of the *Gibbs* standards to the "controversy" (between citizens of different states; *see* note 5, *supra* ) before it that "[w]e may assume without deciding that the Court of Appeals was correct in this regard." 437 U.S. at 371 n.10, 98 S.Ct. at 2402.

There is some authority for the proposition that "[t]he term 'controversies,' if distinguishable at all from 'cases,' is so in that it is less comprehensive that the latter, and includes only suits of a civil nature." *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 239, 57 S.Ct. 667, 81 L.Ed. 889 (1937), *quoting* Justice Field in *In Re Pacific Railway Commission,* 32 F. 241, 255 (1887), who cites to Justice Iredell's opinion in *Chisholm v. Georgia,* 2 U.S. (2 Dall.) 419, 430–31, 1 L.Ed. 440 (1793) as precedent; *accord, Muskrat v. United States,* 219 U.S. 346, 356–57, 31 S.Ct. 250, 55 L.Ed. 246 (1911). The description of "controversies" as being "less comprehensive" than "cases" might arguably mean that the scope of a "controversy" for pendent jurisdiction purposes is narrower than the scope of a "case"—and that, therefore, a stricter standard than is set forth in *Gibbs* should be applied in determining if Article III bars the exercise of pendent jurisdiction in a "controversy," as opposed to a "case."

But we see little merit in this approach. Justice Iredell's opinion in *Chisholm v. Georgia,* 2 U.S. (2 Dall.) 419, 430–31, 1 L.Ed. 440 (1793) is the authority which is traditionally cited for the proposition that controversies are less comprehensive than cases. Yet, the only distinction Justice Iredell made between "cases" and "controversies" in *Chisholm* was that the latter referred to civil suits only. *Chisholm,* therefore, provides little support for the proposition that civil "controversies" are different from civil "cases."

Commentators maintain that nothing has ever been made of the suggestion that controversies are less comprehensive than cases. 13 Wright, Miller & Cooper, *Federal Practice & Procedure* § 3529 at 147 (1975). In any event, the suggested distinction nei-

---

**6.** The plurality in *Glidden Co. v. Zdanok,* 370 U.S. 530, 563–65, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962), stated that Article III's extension of judicial competence over controversies to which the United States is a party conferred jurisdiction over suits to which it is a defendant, including FTCA suits. One commentator maintains, however, that debate exists as to whether FTCA actions are federal question "cases" or "controversies" to which the

government is a party, 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3563 at 419 n.19 (1975), while another maintains that there is obvious overlap among the categories of actions listed in Article III, 1 *Moore's Federal Practice* ¶ 0.60[2.–1] at 607 (2d ed. 1978), implying that perhaps an FTCA action could be properly characterized as either a "case" or "controversy."

ther arose nor has been applied in analyzing the permissible scope of pendent jurisdiction,[7] so even if for some purposes controversies should be viewed as being "less comprehensive" than cases, there is no precedent that they should be so viewed for pendent jurisdiction purposes. There is, moreover, some precedent for applying the *Gibbs* standards to "controversies." The dissenters in *Kroger* did so, albeit without binding themselves to this approach in the future. 437 U.S. at 378–79, 98 S.Ct. 2396 (White, J., with whom Brennan, J. joined). A final consideration is that no reasons of policy or practicality have been advanced as to why standards other than *Gibbs* should be applied to the "controversy" before us. In sum, we think that although *Gibbs* involved a "case," while Federal Tort Claims Act actions probably are "controversies," the *Gibbs* standards are not on that account inapplicable to the latter.

A second difference between *Gibbs* and the present action is that plaintiff's federal and nonfederal claims in *Gibbs* were both against the same party, while here plaintiffs' federal claim is against the United States, and their nonfederal claim is against Hospital Mimiya. This difference could have been critical had Mimiya been brought into the case solely as a consequence of appellants' nonfederal claim against it. *Moor v. County of Alameda*, 411 U.S. 693, 712–15, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Moor was a civil rights action against several deputy sheriffs, the sheriff of Alameda County, and the County itself, in which the claims against the County were nonfederal in character. *Id.* at 710, 93 S.Ct. 1785. Applying *Gibbs*, the Court found that plaintiff's claims against the deputy sheriffs and sheriff stated substantial federal causes of action against them and that the nonfederal claims against the County derived from the same nucleus of operative fact as the federal claims against the other parties. *Id.* at 712, 93 S.Ct. 1785. The Court indicated, however, that merely because the *Gibbs*

standards were met did not necessarily mean that Article III was not a bar to the exercise of pendent jurisdiction where that jurisdiction would extend over a nonfederal party as well as a nonfederal claim. The Court said that because the County was "implicated in the litigation only with respect to the pendent state law claim and not also with respect to any claim as to which there is an independent basis of federal jurisdiction," *id.* at 713, 93 S.Ct. at 1797, "[w]hether there exists [constitutional] power to hear the state law claims against the County is, in short, a subtle and complex question with far-reaching implications." *Id.* at 715, 93 S.Ct. at 1799. The Court declined to reach the issue because it concluded that assuming, *arguendo*, the existence of power to hear the nonfederal claims, the district court had not abused its discretion in declining to exercise that power. *Id.*

We, too, need not reach the difficult question whether the district court would have power under Article III to join a nonfederal party as well as hear a nonfederal claim. *See Aldinger*, 427 U.S. at 14–15, 96 S.Ct. 2413. In the present case, the entity against which the nonfederal claim is raised is already a party as the result of the United States' third-party complaint which was based upon an independent ground of federal jurisdiction, 28 U.S.C. § 1345 (quoted in note 4, *supra*). True, Hospital Mimiya is not the same party as the one against whom the anchoring federal claim was raised, but we do not think that this fact is by itself particularly significant. Mimiya is already in the case on the basis of independent federal jurisdiction so there is no need to decide whether pendent power can be stretched to the point of bringing a wholly new, nonfederal party into a lawsuit. In the present circumstances at least—and without purporting to decide what the outcome would be were Hospital Mimiya not already a party to the proceedings on a

---

**7.** The suggested difference between "cases" and "controversies" originated and has traditionally been referred to, in the context of determining whether a question or dispute

presented to a court is justiciable. 13 Wright, Miller & Cooper, *Federal Practice & Procedure* § 3529 at 147–49 (1975).

separate federal jurisdictional basis—we hold that the *Gibbs* standards are applicable here.[8]

■ Having decided, despite differences between *Gibbs* and the present case, that *Gibbs* provides the correct measure for determining if Article III allows the district court to hear appellants' nonfederal claim against Hospital Mimiya, we next turn to the application of the *Gibbs* standards. It was held in *Gibbs* that a district court has power under Article III to hear a nonfederal claim if that claim and the federal claim derive from a common nucleus of operative fact and if the federal claim is of sufficient substance to confer jurisdiction on the court. These are the tests that must be met here for Article III jurisdiction to exist. Whether appellants' claim against the United States based on the purported negligence of personnel at the V.A. Hospital is of sufficient substance to confer jurisdiction under the Federal Tort Claims Act depends upon whether the conduct alleged is conduct for which "a private person, would be liable . . . in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). As that issue, which requires reference to the local law of Puerto Rico, has not been briefed or argued, we do not decide it, but refer it to the district court upon remand. The same is true of the interrelated question whether appellants' claims derive from a common nucleus of operative fact. Both must be resolved in plaintiffs' favor for the court to have jurisdiction under Article III. Should the court rule in plaintiffs' favor on both questions, this will not end matters: the district court will still retain discretion to decide whether or not to exercise pendent jurisdiction over the nonfederal claim, *see Gibbs*, 383 U.S. at 726–29, 86 S.Ct. 1130.

Having gone as far as we can with respect to Article III, we now turn to the second hurdle which must be cleared in order to find pendent jurisdiction over the claim against Hospital Mimiya. The Supreme Court has said that beyond the "constitutional minimum," i. e., compliance with Article III,

"there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim [here, the Federal Tort Claims Act] in order to determine whether 'Congress in [that statute] has . . . expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim."

*Kroger*, 437 U.S. at 373, 78 S.Ct. at 2402, quoting *Aldinger v. Howard*, 427 U.S. at 18, 96 S.Ct. 2413.[9]

8. The district court based its holding that it lacked power to hear appellants' claim against Mimiya on the ground that it did not have the power under Article III to do so and cited to *Moor*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596, and *Ayala v. United States*, 550 F.2d 1196 (9th Cir. 1977), *dismissed per stip.*, 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978). As discussed above, in *Moor* the Court did not reach the Article III issue and, in any case, it is distinguishable from the present case because here the nonfederal claim is against a person who is a party to the suit as the result of a federal claim against it.

In *Ayala*, as in *Moor*, the parties against whom the nonfederal claims were raised would not have been a party to the suit but for the nonfederal claims. Therefore, it too is distinguishable from the present case. Furthermore, the holding in *Ayala*, that the exercise of pendent jurisdiction was barred by constitutional considerations, was based on a case, *Kataoka v. May Department Stores Co.*, 115 F.2d 521 (9th Cir. 1940), "which predated *Gibbs* and the expansion of the concept of pendent jurisdiction beyond the narrow limits set by *Hurn v. Oursler*, [289 U.S. 238, 153 S.Ct. 586, 77 L.Ed. 1148 (1933)]," *Moor*, 411 U.S. at 714, 93 S.Ct. at 1798. *See Ayala*, 550 F.2d at 1199–1200, where the court reaffirms its holding in *Hymer v. Chai*, 407 F.2d 136, 137–38 (9th Cir. 1969), which is based on *Kataoka. Moor*, 411 U.S. at 714, 93 S.Ct. 1785.

9. Based upon its reading of *Gibbs, Aldinger*, and *Kroger*, the government argues that in the present case we need not consider whether Congress has manifested an intent that jurisdiction not be exercised over the nonfederal claim, only whether Article III bars such jurisdiction. The government contends that congressional intent need only be considered in "pendent party" cases, which it defines as those actions in which the plaintiff desires to raise a nonfederal claim against a person who is not already a party as the result of a federal claim pending against him. The present case is a "pendent claim" action, according to the

The "posture" of appellants' claim against Hospital Mimiya is as follows. As in *Kroger*, appellants' claim against the third-party defendant, Hospital Mimiya, is not ancillary to their claim against the United States in the sense of being dependent upon the outcome of that claim. The claim against Hospital Mimiya is separate and independent. This fact distinguishes the instant case from the cases in which ancillary jurisdiction is most commonly exercised. *See Kroger*, 437 U.S. at 376, 98 S.Ct. 2396.

Unlike the situation in *Kroger*, however, appellants' claim against the United States must be brought in a federal court. 28 U.S.C. § 1346(b). If appellants are barred from suing Hospital Mimiya in the instant suit, they will be forced to pursue their claims against the government and Hospital Mimiya in separate forums, one federal and one state. We are not faced with a situation where " 'the efficiency plaintiff seeks so avidly is available without question in the state courts.' " *Kroger*, 437 U.S. at 376, 98 S.Ct. at 2404, *quoting Kenrose Manufacturing Co. v. Fred Whitaker Co.*, 512 F.2d 890, 894 (4th Cir. 1972). The majority in *Aldinger* indicated that their decision might have been different had a denial of pendent jurisdiction left plaintiff with no recourse but to pursue her case in two forums.

"When the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that *only* in a federal court may all claims be tried together."

*Aldinger*, 427 U.S. at 18, 96 S.Ct. at 2422 (emphasis in original; footnote omitted). *See also Bowers v. Moreno*, 520 F.2d 843, 847–48 (1st Cir. 1975); *Musher Foundation v. Alba Trading Co.*, 127 F.2d 9, 11 (2d Cir. 1942) (dissenting opinion) ("If the roast must be reserved exclusively for the federal bench, it is anomalous to send the gravy across the street to the state courthouse.").

A final point bearing on the "posture" of the nonfederal claim is that Hospital Mimiya is not being dragged into the case solely as a result of this claim. As we have already discussed, Hospital Mimiya is in the litigation because of the government's third-party complaint, based upon an independent ground of federal jurisdiction, 28 U.S.C. § 1345. A nonfederal claim against a party who would not otherwise be in the action would present "a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state law claim." *Aldinger*, 427 U.S. at 18, 96 S.Ct. at 2422. This is so because "the addition of a completely new party [runs] counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress." 427 U.S. at 15, 96 S.Ct. at 2420.

Having described what *Kroger* calls the "posture" of appellants' claim against Hospital Mimiya, we turn to an analysis of the "specific statute that confers jurisdiction," namely the Federal Tort Claims Act, "to determine whether 'Congress in [that statute] has . . . expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim" before us. *Kroger*, 437 U.S. at 373, 98 S.Ct. at 2402, *quoting Aldinger*, 427 U.S. at 18, 96 S.Ct. 2413. Congress has not expressly prohibited jurisdiction over claims of this type. So we need only consider whether Congress

government, because appellants wish to assert a nonfederal claim against a party, Hospital Mimiya, against whom a federal claim (the third party complaint) is pending.

While the approach advocated by the government may seem reasonable in light of *Gibbs* and *Aldinger*, we think our approach may be the correct one when *Kroger* is taken into account. In *Kroger* the Court advocated consideration of both Article III and congressional intent without attempting to classify the case before it as being either a pendent party or a pendent claim action.

In any event we decline to reach the issue as to which of these two approaches constitutes the correct reading of the *Gibbs-Aldinger-Kroger* trilogy because under either approach our decision concerning the district court's right to exercise jurisdiction over the nonfederal claim in the present case would be the same.

has " 'by implication negated' the exercise of jurisdiction." *Id.* We conclude that it has not.

Unlike the diversity statute, which has been construed restrictively, *Kroger,* 437 U.S. at 373–74, 98 S.Ct. 2396, the Federal Tort Claims Act, enacted in 1946, *United States v. Muniz,* 374 U.S. 150, 152, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), has generally been liberally construed.[10] Congress, moreover, has made no later enactments narrowing the scope of the statute nor taken any action inconsistent with the exercise of pendent jurisdiction here. *Compare Kroger,* 437 U.S. at 373–74, 98 S.Ct. 2396. Therefore, contrary to the situation in *Kroger* with respect to the diversity statute, exercise of pendent jurisdiction in the present case will not contravene any congressional mandate. *See Kroger, supra.*

Given the posture of appellants' claim against Hospital Mimiya, considerations of judicial economy, convenience and fairness to [the parties], the policies upon which the doctrine of pendent jurisdiction is founded, *Kroger,* 437 U.S. at 377, 98 S.Ct. 2396; *Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 627, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974); *Rosado v. Wyman,* 397 U.S. 397, 405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130, favor such jurisdiction here; its exercise will not, moreover, circumvent or "flout [a] congressional demand," 437 U.S. at 377, 98 S.Ct. 2396.

■ We hold, therefore, that the district court is not barred by statutory considerations from exercising pendent jurisdiction over appellants' nonfederal claim against Hospital Mimiya. We leave it for the district court, however, to decide on remand whether in this case there is sufficient com-

pliance with the *Gibbs* criteria to meet Article III requirements. If the court should so find, it should then decide, as a matter of sound discretion, whether it is advisable for it to exercise its power over the nonfederal claim. *Gibbs,* 383 U.S. at 726–29, 86 S.Ct. 1130.

*Reversed and remanded for further proceedings consistent with this opinion.*

---

10. *See,* e. g., *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *Rayonier, Inc. v. United States,* 352 U.S. 315, 318–20, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957); *Indian Towing Co., Inc. v. United States,* 350 U.S. 61, 64–69, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *United States v. Yellow Cab Co.,* 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 923 (1951); *Maltais v. United States,* 439 F.Supp. 540, 544 (N.D.N.Y.1977). An exception to this trend has been in the area

of claims for members of the armed services who have been injured in the course of military service. The FTCA has been construed not to constitute a waiver of sovereign immunity over these claims. *Stencil Aero Eng. Corp. v. United States,* 431 U.S. 666, 674, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), *reaffirming Feres v. United States,* 340 U.S. 135, 142, 71 S.Ct. 153, 95 L.Ed. 152 (1950).