**Sherman FRIED, Plaintiff,**

v.

**UNITED STATES of America, Argonne National Laboratory, Argonne University Association, Nuclear Regulatory Commission, and Argonne Occupational Health and Safety Division, Defendants.**

No. 81 C 5387.

United States District Court, N.D. Illinois, E.D.

Dec. 21, 1983.

Richard H. Angelotti, Angelotti & Cesario, Hinsdale, Ill., for plaintiff.

David List, Sidley & Austin, Dan K. Webb, U.S. Atty. by William T. Clabault, Asst. U.S. Atty., Chicago, for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

### I. *Introduction*

This action arises as a result of an accident at a nuclear research facility in DuPage County, Illinois. The Argonne National Laboratory ("Laboratory") is owned by the United States. It is operated by the University of Chicago ("University") under the terms of a contract between the United States, the University, and the Argonne Universities Association ("Association"), an association of universities involved in research at the Laboratory. The contract controls the direction, operation and management of the Laboratory and defines each party's role in the running of the facility. Included in the activities of the Laboratory is the operation of a nuclear reactor. The contract states: "[T]he University recognizes that such operation involves the risk of a nuclear incident which, while the chances are remote, could adversely affect the public health and safety." (Contract, Article XXII.)

Plaintiff was employed by the University as a radio-chemist and worked at the Laboratory. Part of plaintiff's duties involved the testing and analysis of nuclear waste

material. Plaintiff alleges that on September 2, 1980, he was testing and analyzing the contents of a small ampoule of liquid nuclear waste material prior to its disposal. The sealed ampoule contained plutonium and americium in an aqueous solution. The contents of the ampoule were stored under pressure. Plaintiff alleges the sealed ampoule exploded in his hands, exposing him both externally and internally to poisonous nuclear waste, causing grievous harm to his body, mind and nervous system.

Plaintiff brought suit in this court against the United States, the Laboratory, the Association and the Argonne Occupational Health and Safety Division ("Safety Division"), a division of the Laboratory charged with maintaining safe conditions at the Laboratory. Plaintiff claims that the defendants negligently breached their duties towards him by allowing the ampoule to be stored in an unsafe manner. Plaintiff's suit against the United States is brought in this court under the Federal Tort Claims Act ("FTCA"). The claims against the other defendants are brought in this court as pendent to the FTCA claim.

Before the court are motions to dismiss, or in the alternative, for summary judgment on behalf of the United States, the Laboratory and the Safety Division. Also before the court is a motion for summary judgment on behalf of the Association. Except for the jurisdictional issue in part IV of this memorandum, all motions are supported by evidence outside of the pleadings and will be treated as motions for summary judgment pursuant to Fed.R. Civ.P. 12(b). Because jurisdiction over the claims against the Laboratory, the Association and the Safety Division hinge upon the court continuing to entertain the FTCA claim against the United States, the government's motions will be discussed first.

## II. *The United States' Duty to Plaintiff*

The Federal Tort Claims Act provides exclusive jurisdiction in federal district courts over all tort claims against the United States. 28 U.S.C.A. § 1346(b). Liability of the United States under the FTCA can only accrue from negligent or wrongful acts or omissions by employees of the government while acting within the scope of their employment. *Id.* It cannot arise from the acts of employees of independent contractors working for the United States. *Id.* at §§ 1346(b), 2671. The United States is only liable to the extent a private person, under the laws of the state where the act or omission occurred, would also be liable. *Id.* at 1346(b). *See Massachusetts Bonding Co. v. United States*, 352 U.S. 128, 129–30, 77 S.Ct. 186, 187, 1 L.Ed.2d 189 (1956). Plaintiff claims the negligence that caused his injury occurred in Illinois. This court must determine whether or not under Illinois law a private person in the United States' position would be liable for the injury.

The government argues that it owed no duty to the plaintiff under Illinois law and could not have been negligent with regard to him. In support of this argument the government contends that though it owned the Laboratory it had neither sufficient possession nor sufficient control for a duty towards the plaintiff to arise. It also contends that plaintiff was employed by an independent contractor over which it had no control. Finally, it claims that it cannot be found liable on an "inherent danger" theory because that would impose strict and vicarious liabilities in contravention of the FTCA.

In Illinois, an owner of property who hires an independent contractor is relieved of liability from activities of that contractor "where the independent contractor is in *exclusive* control of the work." *Weber v. Northern Illinois Gas Co.*, 10 Ill.App.3d 625, 637, 295 N.E.2d 41, 49 (1st Dist.1973). To be held liable for acts or omissions of independent contractors, therefore, an employer must have some control over the operative details of some part of the contractor's work. *Coty v. U.S. Slicing Machine Co.*, 58 Ill.App.3d 237, 241, 15 Ill.Dec. 687, 691, 373 N.E.2d 1371, 1375 (2d Dist.1978). This control must be sufficient to warrant the imposition of liability. "[A]n employer who retains merely

the general right to order the work stopped or resumed, to inspect its progress or receive reports, to make suggestions or recommendations which need not be followed, or to prescribe alterations and deviations, cannot incur liability under this rule." *Pasko v. Commonwealth Edison Co.,* 14 Ill.App.3d 481, 488, 302 N.E.2d 642, 648 (1st Dist.1973). *See Coty, supra,* 58 Ill. App.3d at 241–242, 15 Ill.Dec. at 91, 373 N.E.2d at 1375. To be subject to liability under this rule, "there must be such a retention of a right to supervise that the contractor is not entirely free to do the work his own way." *Pasko, supra,* 14 Ill. App.3d at 488, 302 N.E.2d at 648.

■ The contract controlling the operation of the Laboratory gives the United States the requisite control over that operation to subject it to liability under Illinois law. The contract holds the United States responsible for the conduct of the program and gives it general control over the contract work (Contract, Article V). It requires the University to run the program in accordance with policies and regulations set by the United States (Contract, Articles V and XXI). It gives the United States power to immediately shut down the program (Contract, Article XXI). It even gives the United States some control over guidelines governing the hiring of personnel (Contract, Article VIII), and provides that the government will pay the premiums for insurance the government demands the University procure (Contract, Article XVIII). Finally, the contract requires the University to follow all the applicable safety and health requirements set by the government (Contract, Article XXI). In short, the control granted the government by the contract, despite the claims by Mr. Golden that the University is an independent contractor, is sufficient to subject the United States to liability.

The government's claim of insufficient control for liability to arise is puzzling. Involved in the contract was nuclear research and the operation of a nuclear reactor. It is discomforting that the United States claims it abdicates control over this type of hazardous research when it hires an independent contractor. This is the type of research over which presumably the government maintains strict safety control. Even if the government had abdicated control over the research in the contract, however, Illinois law would not allow it to also abdicate its responsibilities.

■ In Illinois an employer of an independent contractor can be liable for injuries incurred from the work of that contractor if the work involves inherently dangerous activity. *Johnson v. Central Tile & Terrazzo Co.,* 59 Ill.App.2d 262, 276–77, 207 N.E.2d 160, 167 (2d Dist.1965). *See Woodward v. Mettille,* 81 Ill.App.3d 168, 175–76, 36 Ill.Dec. 354, 400 N.E.2d 934, 941–42 (3d Dist.1980). The reasoning behind this rule is important:

> The exception is sometimes said to apply where the work contracted is "inherently" or "intrinsically" dangerous or will be a probable source of injury to others unless certain precautions are taken. The duty to take these precautions is then absolute in the employer; he may not delegate this duty.

*Johnson v. Central Tile & Terrazzo Co.,* 59 Ill.App.2d at 277, 207 N.E.2d at 167. In effect, under Illinois law an employer of an independent contractor for performance of inherently dangerous work owes a duty to the contractor's employees and third parties that may be injured by the work. That duty is to take proper precautions to ensure the safety of the employees and third parties. This duty cannot be delegated to other parties, including independent contractors.

■ There can be no doubt that the operation of a nuclear reactor and the handling and testing of nuclear wastes are inherently dangerous activities. The contract acknowledges the risk of a nuclear incident which "could adversely affect the public health and safety." The release of excess radiation into the atmosphere or a malfunction of the reactor, causing radiation leaks, cooling fluid spills, or a partial or total melt-down of the core unit, are all possible results of unsafe practices of the Laboratory. The hazards of radiation and the possi-

bility of a "nuclear incident" have been recognized by Congress. *See* 42 U.S.C. §§ 2021(g) and 2210(e). The government, in contracting out such research, cannot delegate its duty to ensure that proper safety precautions are taken.

Contrary to the government's assertions, application of a non-delegable duty in Illinois is not tantamount to imposing strict liability or vicarious liability. Though the imposition of absolute liability is not permitted by the FTCA, *Dalehite v. United States*, 346 U.S. 15, 44, 73 S.Ct. 956, 972, 97 L.Ed. 1427 (1953); *Wright v. United States*, 404 F.2d 244, 246 (7th Cir. 1968), Illinois is not holding the government strictly liable but is instead imposing a duty which, if unfulfilled, will make the government negligent and thereby liable. The degree of care of the government is not irrelevant, as it was in *Dalehite*. Similarly, though the government cannot be held vicariously liable for the negligence of its independent contractor, *see* 28 U.S.C.A. §§ 1346(b), 2671, in the present case the United States would not be held vicariously liable for its contractor's negligence, but liable for its own negligence in not fulfilling its non-delegable duty to take precautionary measures. Non-delegable duties have been found adequate bases for liability under the FTCA in this circuit, *see Fentress v. United States*, 431 F.2d 824, 828 (7th Cir.1980), and non-delegable duties based on inherently dangerous activities have been found an adequate base for liability under the FTCA elsewhere. *See Rooney v. United States*, 634 F.2d 1238, 1244 (9th Cir.1980). Accordingly, this court finds that the United States did owe a duty to the plaintiff. Summary judgment on that issue is denied.

### III. *The United States' Statutory Immunity Claim*

The United States also claims it is statutorily immune from plaintiff's tort claim pursuant to section 5(a) of the Illinois Workers' Compensation law. The workers' compensation law is designed to protect employees from the expense, delay and uncertainty of seeking compensation for injuries through litigation by providing them with prompt and equitable compensation for their injuries. *See Kelsay v. Motorola*, 74 Ill.2d 172, 180–81, 23 Ill.Dec. 559, 562, 384 N.E.2d 353, 356 (1979). Liability of the employer is automatic if the employee is injured in the course of the employee's work. The *quid pro quo* for this automatic liability is immunity for the employer against any common law or statutory claim for damages brought by the injured employee. *See* Ill.Rev.Stat., ch. 48, § 138.5(a) (1983).

The government hired the University to run the Laboratory. The University was required to hire the personnel. The contract also provided that the University would maintain workers' compensation insurance at the government's expense. Though the government was not the immediate employer of plaintiff it believes it is immune from liability based on the following argument: The purpose of workers' compensation laws is to protect employees. When an employer is uninsured the employee is in danger of being unprotected. To guard against the hiring of uninsured, and consequently lower-priced, independent contractors, general contractors who hire uninsured independent contractors are often deemed "statutory employers" and are liable for the workers' compensation claims of employees of these independent contractors. *See* Ill.Rev.Stat., ch. 48, § 138.1(a)(3) (applying to certain types of employers). If a general contractor is liable under the statute, that contractor should be considered a "statutory employer" and should receive the *quid pro quo* benefit of "statutory immunity." If a general contractor who employs uninsured subcontractors is immune, then equity demands that a general contractor who requires that its independent contractors be insured, and pays the premiums, is also immune. Thus, the government should be granted immunity.

The government's argument has been accepted in the context of a FTCA action by a number of courts. *See e.g., Griffin v. United States*, 644 F.2d 846 (10th Cir.1981); *Roelofs v. United States*, 501 F.2d 87 (5th Cir.1974), *cert. denied*, 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (1975); *Olveda v.*

*United States*, 508 F.Supp. 255 (E.D.Tex. 1981). In addition, it has been promoted by at least one authoritative commentator on the subject of workers' compensation. *See* 2A A. Larson, Workmen's Compensation, § 72.31(c) (1982). This court, however, is obligated to apply the law of the state where the negligent act or omission occurred, 28 U.S.C.A., § 1346(b), and in Illinois the applicable law does not allow the court to accept the government's argument.

■ In *Laffoon v. Bell & Zoller Coal Co.*, 65 Ill.2d 437, 3 Ill.Dec. 715, 359 N.E.2d 125 (1976), the Supreme Court of Illinois held that employers of uninsured independent contractors, who were liable for compensation under section 1(a)(3) of the state's Workers' Compensation Act, would not be granted tort immunity under the Act. The court stated that on equal protection grounds it could not construe section 5(a) of the law, which confers immunity, to cover employers of independent contractors. The court wrote: "[W]e must interpret section 5(a) as conferring immunity upon employers only from common law or statutory actions for damages by their *immediate* employees. *Id.* at 447, 3 Ill.Dec. at 720, 359 N.E.2d at 130 (emphasis supplied). Thus, in Illinois, though section 1(a) (3) of the workers' compensation law creates statutory liability for certain types of jobs, there is no statutory employer immunity.

The government argues that *Laffoon* is distinguishable because section 1(a)(3) of the workers' compensation law refers to specific activities, of which work with nuclear reactors and their by products are not a part. This argument, however, narrows the scope of *Laffoon* to an excessive degree. The thrust of *Laffoon* is that statutory immunity for tort actions will only extend, in Illinois, to the immediate employers of the injured employee. That *Laffoon* specifically dealt with section 1(a)(3), which applies to construction and demolition work, does not restrict its application to only those types of employment mentioned in the section. Any other interpretation would allow employees working in the types of employment ·delineated in section 1(a)(3) to sue their general contractors while giving general contractors dealing with other types of employment the opportunity to limit their liability by arranging their payment of the workers' compensation insurance premiums (with no added cost since the premium expenses are passed along from independent contract to general contractor in any event). Such an interpretation would create equal protection problems similar to those confronted and dispensed with in *Laffoon*, especially where, as here, the employment might be as hazardous as those types dealt with in section 1(a)(3). When the court in *Laffoon* stated that section 5(a) conferred immunity only upon immediate employers, it referred, this court believes, to all employees in all types of employment.

■ The government makes two final arguments that can be disposed of quickly. First, it argues that section 2 of the Workers' Compensation Act provides for election of coverage if an employer, not covered, so desires. *See* Ill.Rev.Stat., ch. 48, § 138.2. Since the government elected to provide coverage, it claims it now should be immune. *Laffoon*, however, makes it clear that only an employee's immediate employer can receive immunity from the Act. This holding applies to section 2 also. In addition, the Laboratory is not covered under section 2 because it involves one of the specifically enumerated hazardous activities in section 3. *See* Ill.Rev.Stat., ch. 48, § 138.3(7). The government also asks this court to disregard *Laffoon*, claiming that the Illinois courts would now reverse that decision. This court refuses to make such a judgment. The theory advanced by the government was raised in *Laffoon* and argued in the dissent. The majority decided not to adopt it. This court cannot disregard that decision. Accordingly, the United States' motion for summary judgment is denied.

## IV. *Pendent Party Jurisdiction*

Defendants Argonne National Laboratory and Argonne Occupational Health and Safety Division have moved to dismiss the

claims against them for lack of federal jurisdiction. Defendants argue that in order for the claims against them to be joined with the federal action against the United States an independent ground for federal jurisdiction must exist. No independent ground for federal jurisdiction over the claims against them has been alleged. They contend, therefore, that this court cannot entertain plaintiff's claims against them. Plaintiff, on the other hand, argues that under applicable pendent jurisdiction law, jurisdiction over state claims against third parties properly lies in this court when derived from a nucleus of operative fact in common with a FTCA claim correctly before this court. Plaintiff contends that judicial convenience, coupled with the FTCA's grant of exclusive jurisdiction over his case against the United States in the federal district court, mandates this result.

In determining whether to exercise pendent jurisdiction, this court must first turn to *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs*, plaintiff brought suit in federal court against the United Mine Workers pursuant to a federal labor statute. Plaintiff also raised a state law claim against the same defendant arising out of the same incident. At issue was whether the district court could exercise pendent jurisdiction over the state law claim. The court laid down a two-step analysis for determining the appropriateness of an exercise of pendent jurisdiction.

In the first step, a court must determine the threshhold issue of whether there is power under Article III of the Constitution to hear the case.

> Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made under their Authority ...," and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

*Id.* at 725, 86 S.Ct. at 1138 (citations omitted).

After a court determines that there is power under Article III to hear the case, it must determine whether or not to exercise that power.

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them.

*Id.* at 726, 86 S.Ct. at 1139. Factors to be considered include whether the state law issue predominates, whether an important question of federal policy is closely tied to the state claim, whether combining the state and federal claims might confuse the trier of fact, and whether the state law issue involved is a novel one which, in the first instance, should be decided by the state courts. *Id.* at 726–27, 86 S.Ct. at 1139–40. This discretion does not lie completely in the district court and exercises of pendent jurisdiction have been reversed even when Article III power to hear the case existed. *See e.g., Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768 (D.C.Cir.1982).

In *Gibbs*, pendent jurisdiction was exercised over a state claim against a defendant already within the jurisdiction of the federal court. In the present case plaintiff seeks to bring entirely new parties into the litigation. The differences between the exercise of jurisdiction in the two cases are significant. *See Moor v. County of*

*Alameda,* 411 U.S. 693, 712–13, 93 S.Ct. 1785, 1797–98, 36 L.Ed.2d 596 (1973). The latter type of jurisdiction has been referred to as "pendent party" jurisdiction and its validity has been addressed, but not ruled upon, by the Supreme Court. *See Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Moor, supra.* The question immediately before this court is what principles to apply in determining the "subtle and complex" issue of pendent party jurisdiction. *See Moor v. County of Alameda,* 411 U.S. at 715, 93 S.Ct. at 1798. This court concludes that the two-step analysis of *Gibbs,* supplemented with an additional step of statutory construction mandated by the Court in *Aldinger,* is the proper analysis for determining the validity of pendent party jurisdiction in a specific case.

The Court in *Aldinger* cast doubt upon the relevance *of Gibbs* to pendent party cases by identifying two important differences between the pendent claim jurisdiction sustained in *Gibbs* and pendent party jurisdiction. *Aldinger v. Howard,* 427 U.S. at 13–16, 96 S.Ct. at 2419–2421. The Court in *Aldinger,* however, did not expressly state that *Gibbs* could not apply to pendent party jurisdiction and the two differences cited by the Court do not preclude such application. The first was the factual difference between *Gibbs* and a pendent party case where the court permits a plaintiff "who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant 'derive from a common nucleus of operative fact.'" *Id.* at 14, 96 S.Ct. at 2420. This difference, however, speaks only to "the question of the proper exercise of judicial discretion in the circumstances and does not vitiate the *Gibbs* analysis or its application to the question of pendent-party jurisdiction." *Id.* at 20–21, 96 S.Ct. at 2423 (Brennan, J., dissenting). In fact, the Court in *Aldinger* implied that the effect of this difference on the exercise of judicial

discretion differs depending on whether " 'the efficiency plaintiff seeks so avidly is available without question in the state courts,' " *Id.* at 15, 96 S.Ct. at 2420, or the grant of jurisdiction to a federal court of the original claim is exclusive, *Id.* at 18, 96 S.Ct. at 2422, quoting from *Kenrose Manufacturing Co. v. Fred Whitaker Co.,* 512 F.2d 890, 894 (4th Cir.1972). It appears that the Court in *Aldinger* viewed the factual difference between a pendent party case and *Gibbs* as a strong but not decisive factor in the exercise of the court's discretion.

The second difference cited by the *Aldinger* Court also does not vitiate the *Gibbs* analysis. Instead, it requires an additional step be added to that analysis when deciding pendent party cases. The Court stated:

> [In] Gibbs Congress was silent on the extent to which the defendant, already properly in federal court under a statute, might be called upon to answer nonfederal questions or claims; the way was thus left open for the Court to fashion its own rules under the general language of Art. III. But the extension of Gibbs to this kind of "pendent party" jurisdiction—bringing in an additional defendant at the behest of the plaintiff—presents rather different statutory jurisdictional considerations.
>
> \* \* \* \* \* \*
>
> Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statute conferring jurisdiction has not expressly or by implication negated its existence.

*Id.* 427 U.S. at 15, 18, 96 S.Ct. at 2420, 2422. The Court was concerned that federal jurisdiction could be extended to encompass parties not only beyond those envisioned by Congress but in direct contravention of congressional intent. In *Aldinger* the Court concluded that Congress, in enacting 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983 had impliedly declined to extend federal jurisdiction over the pendent party defendant. Similar examinations have

been conducted by lower federal courts in deciding whether to exercise pendent party jurisdiction. *See e.g., State of North Dakota v. Merchants National Bank and Trust Co.*, 634 F.2d 368, 373–74 (8th Cir. 1980); *Ortiz v. United States*, 595 F.2d 65, 71–73 (1st Cir.1979). In those courts this examination has been carried out in addition to and not instead of the *Gibbs* analysis.

Having found that the differences between pendent claim and pendent party jurisdiction cited by the Court in *Aldinger* do not compel discarding the *Gibbs* analysis, the court notes that there are strong indications that *Gibbs* is applicable. Justice Brennan, the author of the *Gibbs* opinion, wrote in his dissent in *Aldinger:*

> Gibbs concerned a state-law claim jurisdictionally pendent to one of federal law, but no reason appears why the identical principles should not equally apply to pendent state-law claims involving the joinder of additional parties. In either case the Art. III question concerns only the subject matter and not the *in personam* jurisdiction of the federal courts. In either case the question of Art. III power in the federal judiciary to exercise subject-matter jurisdiction concerns whether the claims asserted are such as "would ordinarily be expected to [be tried] in one judicial proceeding," and the question of discretion addresses "considerations of judicial economy, convenience and fairness to litigants."

*Aldinger v. Howard*, 427 U.S. at 20, 96 S.Ct. at 2423 (Brennan, J., dissenting). This view of *Gibbs* was enunciated by the Court in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), when it wrote: "It is apparent that *Gibbs* delineated the constitutional limits of federal judicial power." *Id.* at 371, 98 S.Ct. at 2401. Since the first step of the *Gibbs* analysis is the proper test for Art. III power, it makes sense that the discretionary factors mentioned in *Gibbs*, along with recognition of the unique factual factors involved in pendent party jurisdiction, must also be taken into account. This has been the conclusion of the majority of counts dealing with the issue. *See*

*State of North Dakota v. Merchants National Bank and Trust Co.*, 634 F.2d at 370–374; *Ortiz v. United States*, 595 F.2d at 65, 71; *Transok Pipeline Co. v. Darks*, 565 F.2d 1150, 1154–55 (10th Cir.), *cert. denied* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1977); *Johnston v. United States*, 546 F.Supp. 879, 881–82 (D.Kan. 1982); *Lee Construction Co., Inc. v. Federal Reserve Bank*, 558 F.Supp. 165, 170–72 (D.Md.1982); *Eklund v. Hardiman*, 526 F.Supp. 941, 943 (N.D.Ill.1981); *Dumansky v. United States*, 486 F.Supp. 1078, 1084 (D.N.J.1980). *But see Ayala v. United States*, 550 F.2d 1196 (9th Cir.1977), *cert. granted.* 434 U.S. 814, 98 S.Ct. 50, 54 L.Ed.2d 70 (1977), *cert. dismissed,* 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978). In determining whether to exercise pendent party jurisdiction this court therefore will apply the *Gibbs* test, as modified by *Aldinger*, and examine (1) whether there is Art. III power, pursuant to *Gibbs*, to hear the case; (2) whether Congress has explicitly or implicitly refused to allow joinder of the pendent party; and (3) whether there are factors sufficient to overcome the natural reluctance of a federal court to bring into a litigation before it an additional defendant over which independent jurisdiction does not lie.

There is clearly Art. III power to hear the pendent claims raised by plaintiff in the present case. The claims against the United States and the state law defendants arose out of a single accident at the Laboratory. In question in the case would be the safety procedures demanded by the government and carried out by the state law defendants. The claims arose from a "common nucleus of operative fact" and are precisely the type of claims plaintiff would be expected to try together. *See Gibbs, supra,* 383 U.S. at 725, 86 S.Ct. at 1138. In addition, the responsibilities of the United States and the state law defendants are so intertwined, and the relevant facts are so similar, that there is little doubt that they would be considered a single case or controversy for Art. III purposes. *See generally Ortiz v. United States*, 595 F.2d at 68–70.

It is also clear that Congress in enacting the Federal Tort Claims Act did not intend to deny jurisdiction over the non-federal defendants. The FTCA's grant of jurisdiction, including "jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff," 28 U.S.C. § 1346(c) indicates a congressional intent to have the United States' liability be determined in a single action. *See Dumansky v. United States*, 486 F.Supp. 1078, 1088 (D.N.J. 1980). In addition, a strong indication that Congress contemplated additional defendants exists in that it made provisions for cross-claims and third-party complaints. *See* 28 U.S.C. 2675(a); *Ortiz v. United States*. Generally, the FTCA has been liberally construed. *See United States v. Muniz*, 374 U.S. 150, 152–53, 83 S.Ct. 1850, 1852–53, 10 L.Ed.2d 805 (1963). That Congress has not taken any action to narrow the construction of the statute further indicates that Congress did not intend to restrict the joinder of parties. Finally, statutory language indicates that Congress intended the United States to be treated like any other party in a tort suit. *See* 28 U.S.C. § 2674 (stating that United States shall be liable "in the same manner and to the same extent as a private individual in like circumstances"). Since a private party sued in Illinois would expect the plaintiff to be able to join additional defendants, it seems likely Congress contemplated the joining of additional parties under the FTCA. *See Johnston v. United States*, 546 F.Supp. at 883.

Since the court finds that it has the Art. III power to hear the state law claims, and that Congress has not explicitly or implicitly denied it jurisdiction over the additional defendants, it must now decide whether to exercise its power. This court, in most circumstances, would feel compelled to follow the general Seventh Circuit position against extending pendent party jurisdiction. *See Hixon v. Sherwin-Williams Co.*, 671 F.2d 1005 (7th Cir.1982); *U.S. General, Inc. v. City of Joliet*, 598 F.2d 1050, 1054–55 (7th Cir.1979); *Hampton v. City of Chicago*, 484 F.2d 602, 611 (7th Cir.1973), *cert. denied*, 415 U.S. 917, 94 S.Ct. 1413, 39

L.Ed.2d 471 (1974); *Bostedt v. Festivals, Inc.*, 569 F.Supp. 503 (N.D.Ill.1983); *Oakhill Cemetery of Hammond v. Tri-State Bank*, 513 F.Supp. 885, 893–94 (N.D.Ill. 1981). Two factors, however, lead the court in the opposite direction.

The first and most crucial factor is the district court's exclusive jurisdiction over the claim against the United States. There is no opportunity for plaintiff to join all the defendants in one action in any other forum but the federal forum. This is not a case where " 'the efficiency plaintiff seeks so avidly is available without question in the state courts.' " *Aldinger v. Howard*, 427 U.S. at 15, 96 S.Ct. at 2420, *quoting Kenrose Mfg. Co. v. Fred Whitaker Co.*, 512 F.2d 890, 894 (4th Cir.1972). Considerations of judicial economy, convenience and fairness to the parties, then, strongly counsel the court to allow pendent party jurisdiction when jurisdiction over the underlying claim is exclusively in federal court. This was recognized in *Aldinger* with respect to the FTCA, when the Court wrote, *in dicta:*

> When the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that *only* in a federal court may all of the claims be tried together.

*Aldinger, supra*, 427 U.S. at 18, 96 S.Ct. at 2422. A number of courts have allowed pendent party actions to proceed when the state action was pendent to an FTCA claim. *See e.g. Ortiz v. United States*, 595 F.2d 65 (1st Cir.1979); *Dick Myers Towing Service, Inc. v. United States*, 577 F.2d 1023, 1024 n. 1 (5th Cir.1978), *cert. denied* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Johnston v. United States*, 546 F.Supp. 879 (D.Kan.1982); *De Bellas v. United States*, 542 F.Supp. 999 (S.D.N.Y.1982); *Obonshain v. Halliday*, 504 F.Supp. 946, 951–52 (E.D.Va.1980); *Ausland v. United States*, 488 F.Supp. 426, 430 (D.S.D.1980); *Dumansky v. United States*, 486 F.Supp. 1078, 1082–89 (D.N.J.1980). Moreover, the

Seventh Circuit has indicated a willingness to allow pendent party jurisdiction when jurisdiction over the federal claim is exclusive in the federal courts or the joinder promotes the efficient resolution of federal rights. *See In Re Oil Spill by the Amoco Cadiz Off the Coast of France*, 699 F.2d 909, 913–14 (7th Cir.1983); *Bostedt v. Festivals, Inc.*, 569 F.Supp. at 506–7.

The second factor in this case that counsels the court to exercise pendent party jurisdiction is that the defendants are alleged to be joint tort-feasors. As such, many additional practical matters weigh heavily toward trying the cases together. *See Pearce v. United States*, 450 F.Supp. 613, 620 (D.Kan.1978). For example, in separate trials each defendant could successfully seek to cast the blame on the other. *See generally Hipp v. United States*, 313 F.Supp. 1152, 1155 (E.D.N.Y. 1970). In addition, since the United States could implead the state defendants, *see Ortiz v. United States*, 595 F.2d at 67, and probably would, the parties would all be in the same forum anyway. *See Id.*, at 70. For these reasons the court decides to exercise pendent jurisdiction in this case.

## V. *Immunity of Argonne National Laboratory, Argonne Universities Association, and Argonne Occupational Health and Safety Division*

Having decided that the court has jurisdiction to hear the pendent claims, the court must now decide the state defendants' motions for summary judgment. The Laboratory, Safety Division and Association each claim that they are immune from tort liability under Illinois' Workers' Compensation Act. *See* Ill.Rev.Stat., ch. 48, ¶ 138.5(a) (1983). The Association's claim will be dealt with first.

██ Under Illinois law statutory immunity under workers' compensation laws is conferred "upon employers only from common law or statutory actions for damages by their immediate employees." *Laffoon v. Bell & Zoller Coal Co.*, 65 Ill.2d at 447, 3 Ill.Dec. at 720, 359 N.E.2d at 130. According to the contract, "It is understood that the individuals comprising the Laboratory Organization are employees of the Univer-

sity." (Contract, Art. VIII.) Though the University and the Association together are to establish "general guidelines concerning personnel policy," it is obvious from Art. VIII of the contract that it is up to the University to carry out those policies in hiring, compensating and supervising employees. Plaintiff was in the immediate employ of only the University.

██ The Association maintains that both it and the University were joint venturers in running the Laboratory and therefore the two parties share the statutory immunity. It is true that joint venturers share statutory immunity under workers compensation. *See Smith v. Metropolitan Sanitary Dist.*, 77 Ill.2d 313, 318, 33 Ill. Dec. 135, 138, 396 N.E.2d 524, 527 (1979). It is not true, however, that the Association and the University were joint venturers. For a joint venture to exist "[t]here must be a community of interest in the performance of the common purpose, a proprietary interest in the subject matter, a right to direct and govern the policy, *and a right to joint control. Swap Shop, Inc. v. M & R Amusement Corp.*, 102 Ill.App.3d 926, 931, 58 Ill.Dec. 467, 471, 430 N.E.2d 499, 503 (1st Dist.1981) (emphasis added). The Association's participation in the running of the Laboratory fails to satisfy the last requirement. According to the contract the University and not the Association was in control of the running of the Laboratory. This is especially so with regard to personnel, where selection, supervision and direction was in the University's complete control (Contract, Art. VIII), and with regard to safety and health, responsibility for which the contract gives to the University (Contract, Art. XXI). The Association's lack of control is even more apparent when contrasted with the government's right to control safety standards, control personnel guidelines and maintain general control over the entire enterprise as detailed in part II of this memorandum. This lack of control and responsibility may, down the line, preclude a finding of liability against the Association for the same reasons claimed by the government, but at the moment it is sufficient to deny the Association

joint venturer status and, therefore, immunity under section 5(a).

The claims of immunity on the part of the Laboratory and the Safety Division have more validity. Section 5(a) grants immunity to "the employer ... or the agents or employees of [the employer]." Ill.Ann.Stat., ch. 48, § 138.5(a) (1983). An Appellate Court of Illinois has interpreted "agents" to cover those persons not specifically covered by the Act but so closely related to the employer that granting immunity would be fully consistent with the Act. *Mier v. Staley,* 28 Ill.App.3d 373, 378–79, 329 N.E.2d 1, 6 (4th Dist.1975). In his affidavit Mr. Golden stated that the Laboratory is not a separate legal entity but, instead, a facility owned by the United States and operated by the University. Mr. Golden states that "Argonne National Laboratory" sometimes refers to the unit of the University that operates the facility. Mr. Golden also states that the Safety Division is not a separate legal entity but, instead, a division of the University unit that operates the Laboratory. These assessments are uncontroverted by the plaintiff and in accord with the court's understanding. Based on these assessments the court finds the Laboratory and the Safety Division to be agents of the University under § 138.5(a) of the Workers' Compensation law and therefore immune. The motion for summary judgment for these defendants is provisionally granted, pending a reply by plaintiffs showing factual bases for a conclusion that the Laboratory and the Safety Division should not be considered agents of the University.

## VI. *Conclusion*

For the foregoing reasons, the United States' motion to dismiss, or in the alternative, for summary judgment, and the Association's motion for summary judgment, are denied. The motion of the Laboratory and the Safety Division for summary judgment is provisionally granted pending a reply by plaintiff showing factual bases for a conclusion that the Laboratory and the Safety Division are not agents of the University.